PHILO F. PETTIBONE

*v.*

THE WEST CHICAGO PARK COMMISSIONERS *et al.*

*Opinion filed April 17, 1905—Rehearing denied June 7, 1905.*

1. CONSTITUTIONAL LAW—*provision concerning a direct annual tax to pay indebtedness construed.* Section 12 of article 9 of the constitution, concerning provision by a municipality for a direct annual tax to pay indebtedness, does not require the actual levy of a tax once for all for the whole period the debt is to run, leaving only the extension and collection to be made annually, but only that the provision impose a legal obligation upon the municipality to pay the debt, enforcible by *mandamus* to compel the levy of an annual tax.

2. SAME—*Park act of 1901 does not violate section 12 of article 9 of constitution.* The act of May 10, 1901, providing for the purchase of land for small parks and for issuing bonds therefor, (Laws of 1901, p. 253,) is not in conflict with section 12 of article 9 of the constitution in providing for an annual tax levy instead of an actual levy of a tax once for all for the whole period during which the debt is to run.

3. SAME—*provision respecting annual tax to pay indebtedness is self-executing.* Section 12 of article 9 of the constitution, requiring municipal corporations, before or at the time of incurring indebtedness, to provide for the levy of a direct annual tax "sufficient" to pay the interest as it falls due and also to discharge the principal within twenty years, is self-executing, and is to be read into every subsequent law authorizing a municipality to incur indebtedness.

4. SAME—*what does not require holding a statute unconstitutional.* Failure of a statute authorizing a municipal corporation to incur indebtedness to provide for the collection of a direct annual tax such as will be "sufficient" to pay the interest and principal in twenty years does not require holding the law invalid, since the provision for the collection of a sufficient tax is to be made by the municipal corporation, under section 12 of article 9 of the constitution, after legislative authority to incur the indebtedness has been conferred upon it.

5. SAME—*when provision of ordinance for levying tax is complete.* If an ordinance passed in pursuance of legislative authority to incur indebtedness provides for the levy of "a direct annual tax sufficient to pay the interest on said bonds as it falls due, and also to pay and discharge the principal thereof within twenty years from

the date of issuing said bonds," the provision for the levy and collection of a "sufficient" tax is complete, even though the corporate authorities are pledged by the ordinance to levy no more than a tax of one mill on the dollar, in the belief such amount will be sufficient.

6. SAME—*Park act of 1901 is unconstitutional, as being a special law regulating township affairs.* The act of 1901, (Laws of 1901, p. 253,) providing for the issue of bonds for the purchase of small parks or pleasure grounds "in any town which is now included within the limits of any city in this State where the boundaries and limits of any such town are co-extensive with the boundaries and limits of any park district in which a board of park commissioners shall now exist," is unconstitutional, as being an act for the regulation of township affairs applicable to only one town in the State.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This is a bill, filed in the Superior Court of Cook county on July 21, 1904, by the appellant against the appellees, the West Chicago Park Commissioners, the town of West Chicago, and John J. Hanberg, county treasurer and *ex officio* county collector of Cook county, praying for an injunction against the West Chicago Park Commissioners, and the town of West Chicago, restraining and enjoining them from issuing, selling or otherwise disposing of one million dollars' worth of bonds, or any part thereof, attempted to be authorized and issued under an act of the legislature of Illinois, approved and in force on May 10, 1901, entitled "An act to authorize the issue of bonds to raise funds for the acquisition and improvement of additional small parks or pleasure grounds, and to provide a tax for the payment of the same;" and from any further attempt to levy any tax whatever for the payment of either the principal of, or the interest on, said bonds, or any part thereof; and also praying that said commissioners, and town, and said county treasurer and *ex officio* county collector, and each of them, be enjoined from the collection of such of said attempted tax, as has already been extended upon the tax books or may hereafter be

extended, or of any tax whatever, for the payment of either the principal of, or interest on said bonds, or any part thereof; and that the defendants be decreed to return to those, who have heretofore paid the same, the taxes levied and collected under said act, and to cancel and deliver up, as the court may direct, to be canceled and destroyed, the one million dollars of bonds, so attempted to be issued under said act; and that orator may have such other and further relief in the premises as equity may require.

Demurrers were filed to the bill by the defendants thereto, the West Chicago Park Commissioners, the town of West Chicago and the county treasurer. On August 1, 1904, a decree was entered sustaining such demurrers; and thereupon appellant, the complainant below, elected in open court to stand by his bill of complaint, and it was ordered that the same be dismissed, and it was thereupon dismissed. The present appeal is prosecuted from the decree sustaining the demurrer, and dismissing the bill.

The bill alleges that the appellant, complainant below, is a resident of the city of Chicago in the town of West Chicago; that he is the owner and possessor of taxable property in the town of West Chicago; that the Board of West Chicago Park Commissioners, and said town of West Chicago, are municipal or *quasi* municipal corporations with certain limited powers of issuing bonds, or raising money by taxation for park purposes; that the act above referred to was adopted by the legislature; that said board and town have undertaken to hold the act, so adopted by the General Assembly, as valid to authorize them to issue and dispose of a certain bond issue of one million dollars to raise funds for the acquisition and improvement of additional small parks and pleasure grounds, and to provide and levy a tax not to exceed one mill on the dollar upon taxable property in said town for the purpose of paying interest on said bonds and the maturing principal of the same; that on or about August 12, 1901, the said board made a requisition in writing upon said

town for one million dollars' worth of bonds to be dated February 1, 1902, payable twenty years after date with interest at the rate of four per cent per annum, payable semi-annually, such interest to be expressed in coupons attached to said bonds, which requisition is attached to the bill as an exhibit.; that said town, on or about the same date, adopted a resolution and order, accepting the said requisition, and directing the attorney of the town to prepare and submit a proper form of bond, which resolution and order are attached to the bill as an exhibit; that on or about March 4, 1902, the corporate authorities of said town of West Chicago adopted an ordinance, authorizing the issuing of interest-bearing coupon bonds to the aggregate amount of one million dollars pursuant to said act, which ordinance is attached to the bill as an exhibit; that the attorney of said town reported a form of bond to the corporate authorities of said town, a copy of which is attached to said bill as an exhibit; that thereupon said form of bond was duly adopted by the corporate authorities of said town, and the supervisor of said town was ordered and directed to have the bonds printed; and it was ordered by the corporate authorities of said town that, after said bonds should have been duly executed, they should be delivered to the West Chicago Park Commissioners for the uses and purposes mentioned in said act, which said resolution and order are attached as an exhibit to said bill.

The bill further states upon information and belief, that the said bonds were printed and executed by the town, and delivered to the West Chicago Park Commissioners to be by them sold and disposed of for the uses and purposes mentioned in the act; that the bonds have not yet been sold or disposed of by said commissioners, but have continued to remain in their hands undisposed of, but that they are making efforts to sell and dispose of the same, and are about to enter into a contract for the sale thereof; that said commissioners, acting upon the assumption that said act is valid, and pursuant thereto, and more especially the third section there-

of, adopted on or about July 13, 1903, a certain resolution that there should be levied and collected under and by virtue of the acts of the legislature of Illinois, a tax of twelve and one-half mills on each dollar's worth of taxable property in the town of West Chicago; that there was included in said tax of twelve and one-half mills, a tax of one mill on each dollar of taxable property of said town under the said act of 1901, levied to pay interest from February 1, 1903, to February 1, 1904, on one million dollars' worth of uncalled bonds issued under the authority of said act, and to provide a sinking fund for the retirement of approximately $40,000.00 worth of bonds during the year 1904, a copy of which resolution, certificate and estimate is attached to said bill as an exhibit; that, by a further resolution, the president and secretary of said Board of West Chicago Park Commissioners were directed immediately to transmit to the corporate authorities of the town of West Chicago, and to the county clerk of Cook county, a copy of the foregoing resolution and estimate and certificate thereto attached; that this was done; that, on or about September 12, 1903, at a meeting of the corporate authorities of said town, it was resolved by such authorities, that a tax of twelve and one-half mills on the dollar be and the same was thereby levied on all of the taxable property of said town, and that the town clerk of said town be and was thereby authorized and directed to transmit to the county clerk of Cook county a copy of the foregoing preamble and resolutions of the said corporate authorities of said town, and all the certificates thereto attached; that this was done, a copy of which resolutions of said town authorities and of the certificates thereto attached, was attached to the bill as an exhibit; that the said county clerk has extended said tax of twelve and one-half mills, including the said tax of one mill so levied as aforesaid pursuant to the said act of 1901, upon the taxable property in said town and against the taxable property of the complainant, the appellant here, and that the tax books, upon which the said tax is about

to be extended, have been, or will be shortly, placed in the hands of the county collector of said county for collection, in which case complainant, and those similarly situated, will be called upon to pay the said one mill tax upon the taxable property of said town and against the taxable property of the complainant; that the foregoing are all the proceedings that have ever been taken in issuing, or providing for the issuance of, said one million dollars' worth of bonds under said act of May 10, 1901, or in levying or collecting, or in providing for the levy or collection of, a tax or taxes to discharge the principal and interest upon the same, and that no act, provision or resolution, other than those contained in the act and proceedings hereinabove specifically referred to and set out in exhibits attached to the bill, including especially section 4 of the ordinance of the town of West Chicago under which the said bonds were issued as aforesaid, was ever passed, enacted or adopted to provide for the collection of a direct annual tax sufficient to pay the interest on such bonds as they fall due, and to pay and discharge the principal thereof in twenty years according to the requirement of article 9, section 12, of the constitution of 1870; that said section 4 of the said ordinance of the town of West Chicago is in the words and figures following, to-wit:

"Sec. 4. There shall be levied and collected upon the taxable property in the town of West Chicago according to the valuation of the same, as made for the purpose of State and county taxations, a direct annual tax sufficient to pay the interest on said bonds as it falls due and also to pay and discharge the principal thereof within twenty years from the date of issuing said bonds; and to that end the corporate authorities of the town of West Chicago hereby bind themselves to levy in each year a direct annual tax not to exceed one mill on the dollar upon the taxable property in said town as aforesaid, to be used and expended by said West Chicago Park Commissioners in paying the interest and principal of said bonds as the same shall mature and become due."

The bill then avers that the knowledge of said acts of said commissioners, and of the corporate authorities of said town, and of said county clerk with reference to the issuing and attempted sale of said bonds, and the levy and collection of the tax to pay the interest on the same, and the maturing principal, has just come to the complainant within one month of the filing of this bill, and that he has never heretofore had occasion or cause to his knowledge to file his bill, as he has herein undertaken to do.

The bill then charges that said act of May 10, 1901, and each and every section thereof, is invalid and unconstitutional, and in violation of and in conflict with that paragraph of section 22 of article 4 of the constitution of 1870 which prohibits special legislation "regulating county and township affairs," and also with the provisions of section 12 of article 9 of the constitution of 1870, and with various other sections of said constitution.

The act of May 10, 1901, above referred to, is as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That in any town which is now included within the limits of any city in this State where the boundaries and limits of any such town are co-extensive with the boundaries and limits of any park district, in which a board of park commissioners shall now exist, having authority by law to acquire, hold, improve and maintain land and the appurtenances in trust for the inhabitants of such town, and of a division or part of such city, and for such parties or persons as may succeed to the rights of such inhabitants, and for the public as a public promenade and pleasure ground or ways, but not for any other use or purpose without a consent of a majority, by frontage, of the owners of the property fronting the same, and without the power to sell, alienate, mortgage or encumber the same, the corporate authorities of such town (meaning the town supervisor, clerk and assessor thereof,) shall have authority, and such corporate authorities of any such town are hereby

empowered, upon the written request to that effect of any board of park commissioners, or the successors thereof, which shall now exist within any such town, to issue bonds in the name of such town to an amount not exceeding in the aggregate the principal sum of one million (1,000,000) dollars, and such bonds, when so issued by such corporate authorities, shall be delivered to such board of park commissioners, to be by them sold in the manner hereinafter provided, and the proceeds thereof used for the purchase and improvement of lots, blocks or parcels of land selected as sites for small parks or pleasure grounds: *Provided,* that the total indebtedness of such town, including the sum of one million (1,000,000) dollars hereby authorized to be issued, shall not exceed five percentum of the value of the taxable property of such town, as ascertained by the last assessment for State and county taxes previous to the issue of any such bonds. And such corporate authorities of any such town shall, in addition to the amount of any tax now authorized by law to be levied and collected annually for park [or] boulevard purposes in any such town, levy and collect annually a tax not to exceed one mill on the dollar upon taxable property in any such town, according to the valuation of the same as made for the purposes of State and county taxation; such tax to be used and expended by such board of park commissioners in governing, maintaining and improving such parks or pleasure grounds, and in paying the interest and principal of such bonds and other necessary and incidental expenses incurred in and about the management of any such small parks or pleasure grounds. The proceeds of the bonds hereby authorized to be issued for the purposes aforesaid shall be used exclusively by such board of park commissioners for the purchase and improvement of the blocks, lots or parcels of land necessary for said small parks or pleasure grounds.

"Sec. 2. Such bonds shall be issued by the corporate authorities of such town aforesaid in the name of said town, upon the request in writing of any such board of park com-

missioners or a majority of the members thereof. Said bonds shall be signed by the corporate authorities in the name of said town, and when so signed shall be delivered by such corporate authorities to such board of park commissioners, who shall, before disposing of the same, endorse upon each one of said bonds a certificate to the effect that such bonds have been issued by the corporate authorities of such town upon the requisition of such board of park commissioners for the issue of such bonds by the corporate authorities of such town. And such certificate, so to be endorsed upon each one of such bonds, shall be evidence that due requisition for the issue of such bonds has been made by such board of park commissioners upon the corporate authorities of such town as aforesaid. Such certificate, so to be endorsed upon said bonds, shall be signed by the president, treasurer, auditor and secretary of such board of park commissioners. The said bonds may be of the denomination of $25.00 and any multiple thereof. They shall bear interest at a rate not to exceed five percentum per annum, to be paid semi-annually, and to be evidenced by coupons thereto attached, and the principal shall be payable at such place and at such time, not exceeding twenty years from date of the issue of said bonds, as such board of park commissioners may determine. Such bonds shall be numbered in regular series and shall be registered upon the records of such board of park commissioners, which registry shall show the number of the bonds, the amount of each bond, when the same is payable, to whom the same is payable and the rate of interest payable thereon: *Provided, however,* that such bonds may be made payable to bearer, or to the order of such person or persons as may be named therein, and, when any of such bonds shall be made payable to bearer, they shall pass by delivery, and provision shall be made by such board of park commissioners, at the option of the holder and in his name, and, after a second registry of any such bond, they, together with any bonds made payable to any particular person or persons, shall pass only by en-

dorsement and delivery. None of such bonds shall be sold by such board of park commissioners for less than the par value thereof and the accrued interest thereon at the date of sale. And such board of park commissioners is hereby empowered to require of the treasurer of any such board a bond, with security to be approved by the circuit court of the county in which such parks or pleasure grounds may be located, sufficient in amount and penalty to protect and save harmless any such board of park commissioners from loss of money or sums of money which may or shall, from time to time, come into the hands of the treasurer of any such board of park commissioners from the sale of any of the bonds issued and sold under, and by virtue of, the provisions of this act. Any person who shall knowingly violate or aid and abet in the violation of any of the provisions of this act shall be deemed guilty of embezzlement, and shall be liable to indictment, trial and punishment as in other cases of embezzlement.

"Sec. 3. For the purpose of providing for the payment of interest on such bonds as it falls due, and also to discharge and pay the principal thereof as the same shall mature, any such board of park commissioners is hereby required, each year, to appropriate from any annual park tax, not heretofore specifically appropriated by law, which may now or hereafter be authorized and directed to be levied upon the taxable property in any such town, whether the same be known as 'boulevard and park tax,' or otherwise, a sum sufficient to meet the interest upon such bonds as it may accrue, and to provide a sinking fund for the purpose of paying the principal of such bonds as they shall mature or become due, according to the provisions of this act.

"Sec. 4. Any and all bonds which shall be issued in accordance with the provisions of this act shall contain the condition that, upon the expiration of five years after the date of such bonds, and upon the expiration of each successive year thereafter, such board of park commissioners shall, at any open meeting of the board of such park commissioners,

select by lot so many and such an amount of such bonds as may be required to absorb the sinking fund hereinbefore provided; and the principal of the bonds so selected shall become due and payable at the date of the next installment of interest maturing on the several bonds so selected from time to time, and shall cease to bear interest after they severally become due and payable by reason of such selection. Such board of park commissioners, immediately after making such selection, shall make and sign in duplicate, a statement of the result thereof, and shall file one copy thereof in the office of the town clerk of such town and the other copy shall be filed in the office of the county clerk of the county in which such town shall be located; and it is hereby made the duty of any such board of park commissioners to pay and discharge the principal of the bonds selected at the date of the next installment of interest maturing on the bonds so selected from the sinking fund hereinbefore provided for that purpose.

"Sec. 5. Any such board of park commissioners is hereby empowered, after the expiration of one year and any time before five years from the date of any such bonds authorized to be issued according to the provisions of this act, to purchase a sufficient number and amount of such bonds then outstanding to absorb the annual sinking fund required by the provisions of this act: *Provided,* that such board of park commissioners shall not be authorized to pay for the bonds authorized by this section to be purchased more than the fair market value thereof at the date of such purchase.

"Sec. 6. Whereas, there is a necessity for the immediate acquisition of the small parks contemplated in this act; therefore, an emergency exists, and this act shall take effect and be in force from and after its passage." (Sess. Laws of Ill. of 1901, p. 253).

Albert M. Kales, and Cyrus Bentley, for appellant.

Delavan B. Cole, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question, presented for our consideration by this record, is the constitutionality of the act of the legislature of Illinois, approved May 10, 1901, entitled "An act to authorize the corporate authorities of towns to issue bonds to raise funds for the acquisition and improvement of additional small parks or pleasure grounds, and to provide a tax for the payment of the same."

It is insisted by the appellant, that the act in question is in conflict with section 12 of article 9 of the constitution of 1870, which provides that "any county, city, school district, or other municipal corporation, incurring any indebtedness as aforesaid, shall before, or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same." The portion of said section 12, which precedes what has just been quoted, is as follows: "No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness."

*First*—The first contention of the appellant is, that the constitutional provision in question requires the actual levy of a tax once for all for the whole period of twenty years during which the debt is to run, leaving only the extension and collection of it to be made annually by the administrative officers of the municipality; and that an annual levy for the respective years is not sufficient. Section 1 of the act, as quoted in the statement preceding this opinion, provides that the corporate authorities of the town shall levy and collect annually a tax not to exceed one mill on the dollar, etc., to

be used by the park commissioners in paying the interest and principal of such bonds, and other expenses. Section 3 of the act, as quoted in the statement preceding this opinion, provides that, for the purpose of providing for the payment of interest on such bonds, as it falls due, and also to discharge and pay the principal thereof as the same shall mature, any such board of park commissioners is required each year to appropriate from any annual park tax, etc., a sum sufficient to meet the interest upon such bonds as it may accrue, and to provide a sinking fund for the purpose of paying the principal of such bonds as they shall mature or become due.

The language of the constitution is, that the municipal corporation, incurring any indebtedness, before or at the time of doing so, shall "provide for the collection of a direct annual tax, sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same." There is no requirement that the municipality shall levy a tax before or at the time of incurring the debt. On the contrary, the only requirement is that provision shall be made "for the collection of a direct annual tax." The provision, so required to be made, must be such an one, as will impose a legal obligation upon the municipality to pay the debt, so that it can be compelled by *mandamus* to levy the tax required. Under section 1 of article 9 of the constitution, taxes must be levied by valuation, the valuation to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise. Under the system of taxation, which prevails in this State, such valuation is fixed and determined annually; and until such valuation is determined, a levy, in the proper sense of that term, cannot be made, or a rate of taxation fixed. Evidently, for this reason section 12 of article 9 requires only that, when municipal indebtedness is incurred, provision shall be made for the payment of interest thereon and the

retirement of the principal in twenty years, instead of requiring that an actual levy once for all be made. Section 12, as above quoted, is sufficiently complied with when provision is made for an annual tax, for the reason that that section uses the words "a direct annual tax." If it was the intention of the framers of the constitution that the tax should be levied once for all before or at the time of the creation of the debt, instead of being collected annually, language could easily have been used to express such intention.

In *Hodges* v. *Crowley,* 186 Ill. 305, where a bill was filed by a tax-payer to enjoin the collection of a tax, upon the ground that the warrants, authorized thereunder, created an indebtedness against the county in excess of the constitutional limitation, this court said (p. 312) : "There can be no lawful levy of a tax except upon an assessment, and under our system all assessments are made annually. How can a lawful levy of a tax be made in 1899 for a year ten years in the future? Admittedly the value of the taxable property of Alexander county for each of the years after 1899 is impossible of ascertainment now. Therefore the mere order of the county commissioners that a levy be made in those future years amounts to nothing as an actual levy of a tax. A tax cannot be said to be levied until it has been extended against assessed taxable property. Moreover, no one can now tell what the amount of the levy will be at the end of ten years, so that warrants may be drawn within that amount. How, then, can it be said that warrants may be drawn upon the taxes for the aggregate amount levied for the whole ten years?" The language thus quoted is precisely applicable to the case at bar. It might here be asked: how can a lawful levy of a tax be made in 1901, or 1903, for a year twenty years in the future? The value of the taxable property in the town of West Chicago for each of the years after 1901 and 1903 is impossible of ascertainment now.

In *City of East St. Louis* v. *Amy,* 120 U. S. 600, the Supreme Court of the United States, speaking through Mr.

Chief Justice Waite, said of this provision in the constitution of Illinois: "The constitutional obligation of the city was not fully met by providing, when the debt was incurred, for the levy and collection of the necessary tax. It required as well the actual levy and collection when needed to pay the debt." In other words, the levy is not to be made in advance once for all, but when needed, that is to say, when the interest and the principal, or parts thereof, mature.

Similar views have been expressed of a similar constitutional provision in other States. In *Bassett* v. *City of El Paso*, 88 Tex. 168, the Supreme Court of Texas had under consideration the following provision in the constitution of that State, to-wit: "No debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking-fund;" and, in deciding upon the validity of certain bonds issued by the city of El Paso, it was there said: "It is contended that this ordinance is void and insufficient to support the bonds under the constitution, the general laws, and the charter of the city, for the reason that it does not levy a tax, but delegates to the assessing and collecting officers the legislative power to make such levy from year to year. The first question presented is, was it necessary, under the law, for the council to actually levy a tax, running through the period of thirty years until the maturity of the bonds, at the time of providing for their issuance? By tax, as here used, we mean a fixed rate or per cent of the assessed values, to be collected annually, without reference to the amount that would be realized each year, as values might advance or decline during the long life of the bonds. * * * Neither of these constitutional or statutory provisions requires, in express terms, the levy of a fixed rate or tax to be collected each year during the life of the bonds, without reference to the different sums that would be annually raised thereby, but they all require that provision be

made for the annual collection by taxation of (1) the interest, and (2) a certain sum as sinking fund. They all use different language but have a common purpose. * * * The language and purpose of these provisions seem to be satisfied by an order, providing for the annual collection by taxation of a 'sufficient sum to pay the interest thereon and create a sinking fund,' etc., though it does not fix the rate or per cent of taxation for each year, by which such sum is to be collected, but leaves the fixing of such rate for each successive year to the commissioners' court or city council. To so construe these provisions as to require, at the time the debt is created, the levy of a fixed tax to be collected through a long series of years, without reference to the unequal 'sums' that would in all probability be realized therefrom, instead of the collection annually of a certain 'sufficient sum' to pay the annual interest and create the sinking fund required by law, would be doing violence to the language used, and authorize, in cases where values rapidly increase, the extortion from the tax-payers of large amounts of money in excess of the amount necessary to satisfy the interest and principal of the bonds, and this in turn would invite municipal corruption and extravagance. If it had been intended to require the actual levy of a tax at the time the debt was created, different and apt language for that purpose would have been used."

In *Mitchell County* v. *Bank,* 91 Tex. 361, the same section of the constitution of that State was construed, and it was there said: "It was not the purpose of the convention in adopting the foregoing article to require that a city or county should, at the time of creating a debt, ascertain the rate per cent required to be levied upon the taxable values of the county in order to raise a sufficient sum to pay the interest and provide a sinking fund upon that debt, and to actually levy that rate of tax at the time. * * * What the constitution requires is, that provision shall be made at the time or shall have been previously made, by which the rate

of tax to be levied is so definitely fixed  *  *  *  that it becomes merely a ministerial act to determine the rate to be levied.  *  *  *  We understand that the provision required by the constitution means such fixed and definite arrangements for the levying and collecting of such tax, as would become a legal right in favor of the holders of bonds issued thereon, or in favor of any person to whom such debt might be payable."

In *Howland* v. *Board of Supervisors,* 109 Cal. 152, in construing a section of the constitution of California, which provides that, "before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal," the Supreme Court of California said: "This provision of the constitution does not require that at the time of the sale or issuance of bonds, or the incurring of the bonded indebtedness, a sinking fund or interest tax be levied. It only requires that, before or at such time, provision must be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal. These bonds were issued by express terms under the provisions of an act of the legislature found in the statutes of 1891, page 295. The notices so prescribed, and the bonds themselves upon their face so recite. That statute fully and completely provides for the payment of the interest upon these bonds, and also for the creation of a sinking fund to extinguish the original indebtedness.  *  *  *  We conclude there is nothing in this point."

Authorities may be found in other States, notably in Wisconsin and Georgia (*Kyes* v. *St. Croix County,* 108 Wis. 136; *Wilkins* v. *City of Waynesboro,* 116 Ga. 359), taking a different view of this constitutional provision from that here expressed, but we are inclined to follow the rule of construction laid down in the Texas and California cases, as the

views there expressed harmonize with the language used in our own decisions, so far as they touch upon the question here involved. We are, therefore, of the opinion that the act of May 10, 1901, is not in conflict with section 12 of article 9 of the constitution, so far as it fails to require an actual levy of a tax once for all for the whole period during which the debt is to run, and so far as it provides for an annual levy of such tax.

*Second*—It is further contended that the act of May 10, 1901, is in conflict with section 12 of article 9 of the constitution of 1870, because it fails to direct the corporate authorities of the town to provide for a direct annual tax, "sufficient to pay the interest upon such debt as it falls due, and also to pay and discharge the principal thereof within twenty years." Section 12 does require that the direct annual tax, whose collection is therein provided for, shall be "sufficient" to pay the interest and principal aforesaid. The reason for the claim, that the act in question does not direct the levy and collection of a sufficient tax, is found in the language employed in sections 1 and 3 of the act. There is no contention here that the total indebtedness of the town of West Chicago, including the sum of one million dollars in bonds authorized to be issued, exceeds five per cent of the value of the taxable property of such town, as ascertained by the last assessment for State and county taxes previous to the issue of any such bonds. So far as the bill and record show, the total indebtedness, including the new issue, is within the five per cent limit prescribed by section 12. The language, objected to in section 1, is that which follows the direction that the corporate authorities of the town "shall, in addition to the amount of any tax now authorized by law to be levied and collected annually for park [or] boulevard purposes in any such town, levy and collect annually a tax not to exceed one mill on the dollar upon taxable property in any such town, according to the valuation of the same as made for the purposes of State and county taxation;" and such language so objected to is as

215  21

follows: "Such tax to be used and expended by such board of park commissioners in governing, maintaining, and improving such parks or pleasure grounds, and in paying the interest and principal of such bonds, and other necessary and incidental expenses incurred in and about the management of any such small parks or pleasure grounds." It will be observed that the language thus quoted does not direct that a sufficient tax be levied to pay the interest and principal of such bonds, but that the tax of one mill to be levied and collected shall be used by the park commissioners, not only in paying the interest and principal of such bonds, but also in governing, maintaining and improving the parks or pleasure grounds, and in paying the necessary and incidental expenses incurred in the management of the small parks or pleasure grounds to be purchased and improved. It is said, that the money to be raised by the tax, thus directed to be levied and collected, must be first applied to the expenses of maintaining and improving the parks, and that only what remains thereafter is to be applied to the payment of the interest and principal of the bonds; and that, this being so, all or nearly all of the amount raised by the tax might be exhausted in the maintenance and improvement of the parks, so as to leave nothing, or very little, to be applied to the payment of the interest and principal of the bonds.

In support of this contention the well settled rule is invoked that, "where the interest and principal of a municipal bonded debt is payable out of the general revenues of the town, no part of such revenue, that is necessary to meet current, legitimate municipal expenses, can be subjected to the payment thereof, but only the surplus of income, after the governmental expenditures have been met or provided for, can by any process of law be applied to such debt." (*White* v. *Mayor and Council of Decatur,* 119 Ala. 480; *Clay County* v. *McAleer,* 115 U. S. 616). The principle is otherwise stated in *Coffin* v. *Davenport,* 26 Iowa, 515, where it was held by the Supreme Court of Iowa, that, "where the ordi-

nary expenses of carrying on the government of a municipal corporation require all of the proceeds arising from a tax, which is the full limit the corporation is authorized to levy, it cannot be compelled to apply a part of such fund to the payment of a judgment held by a creditor against it."

The other portion of the act of 1901, which is objected to as not providing for the collection of a tax, "sufficient" to pay the interest and principal of the bonds, is found in section 3 where it is said: "For the purpose of providing for the payment of interest on such bonds as it falls due, and also to discharge and pay the principal thereof as the same shall mature, any such board of park commissioners is hereby required, each year, to appropriate from any annual park tax, not heretofore specifically appropriated by law, which may now or hereafter be authorized and directed to be levied upon the taxable property in any such town, whether the same be known as 'boulevard and park tax,' or otherwise, a sum sufficient to meet the interest upon such bonds as it may accrue, and to provide a sinking fund," etc.

We are inclined to think, that the contention of the appellant in reference to the provisions thus quoted from sections 1 and 3 of the act is correct, and that such sections do not, within the meaning of the constitution, provide in express terms for a tax "sufficient" to pay the interest and principal of the bonds. The provision in section 1 is for a tax, which is to be used and expended for other purposes as well as that of paying the interest and principal of the bonds, to-wit, the maintenance and improvement, etc., of the parks. Section 3 directs that the board of park commissioners shall appropriate a sum, sufficient to meet the interest and principal of the bonds, from any annual park tax "not heretofore specifically appropriated by law." The money, raised by the tax, is not to be applied absolutely and without condition to the payment of the interest and principal of the bonds, but so much of it only is to be applied to such purpose, as has not theretofore been specifically appropriated by law to some other pur-

pose.    The language of the constitution is peremptory, that the municipal authorities shall, before or at the time of incurring the indebtedness, provide for the collection of a direct annual tax "sufficient" to pay the interest and principal of such bonds, and not to apply such money to that purpose, as may remain after paying other expenses, or in discharge of other previous appropriations.

But it is not necessary to declare this act unconstitutional upon the ground thus stated, for the reason that the provision of the constitution, embodied in section 12 of article 9, as above quoted, has been held to be self-executing, and is to be read into every law, passed after the adoption of the constitution, which allows a debt to be incurred.

In *City of East St. Louis* v. *Amy,* 120 U. S. 600, the Supreme Court of the United States, speaking through Mr. Chief Justice Waite, placed a construction upon this provision of the Illinois constitution, and said: "In this case the constitution limited the power of the legislature of Illinois in respect to the grant of authority to municipal corporations to incur debts, but it declared in express terms that, if a debt was incurred under such authority, the corporation should provide for its payment by the levy and collection of a direct annual tax, sufficient for that purpose.    Under this provision of the constitution, no municipal corporation could incur a debt without legislative authority, express or implied, but the grant of authority carried with it the constitutional obligation to levy and collect a sufficient annual tax to pay the interest, as it matured, and the principal within twenty years.    This provision for the tax was written by the constitution into every law passed thereafter by the legislature, allowing a debt to be incurred; and, in our opinion, it took the place in existing laws of all provisions for taxation to pay debts thereafter incurred under old authority, which were inconsistent with its requirements.    It was made by the people a part of the fundamental law of the State that every debt incurred thereafter by a municipal corporation, under the

authority of law, should carry with it the constitutional obligation of the municipality to levy and collect all the necessary taxes required for its payment."

In *City of East St. Louis* v. *People,* 124 Ill. 655, this court followed and adopted the construction thus placed upon section 12 by the Supreme Court of the United States, and in the latter case it was said (p. 662) : "The constitutional provision, that no municipal corporation shall be allowed to become indebted to an amount exceeding five per cent, etc., is a limitation upon the power of the legislature to authorize cities of the State to contract indebtedness. * * * The constitution of 1870 * * * provides, in section 12 of article 9, as above quoted, that any municipal corporation, incurring any indebtedness under authority of law not exceeding the five per cent above named, shall, before or at the time of doing so, provide for the collection of a direct annual tax, sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same. * * * The constitutional provision now under consideration is self-executing. It supplies a sufficient rule, by means of which the duty imposed may be enforced. (Cooley's Const. Lim.—5th ed.—. p. 100). No supplemental legislation is necessary in order to make it effectual.—*People* v. *Bradley,* 60 Ill. 390; *Kine* v. *Defenbaugh,* 64 id. 291; *Mitchell* v. *Illinois and St. Louis Railroad Co.* 68 id. 286; *Law* v. *People,* 87 id. 385."

Inasmuch as the constitutional provision in question is self-executing, and must be read into the act, it may be held to take the place of, and to be substituted for, the objectionable language already quoted from sections 1 and 3. It is to be noted that the constitutional provision here under consideration does not say that the legislature shall provide for the collection of a direct annual tax, etc., but that "any county, city, school district, or other municipal corporation incurring any indebtedness as aforesaid," shall provide for the collection of a direct annual tax, etc. The provision for the col-

lection of the direct annual tax is to be made by the municipal corporation, which levies the tax, and not by the legislature. The language of the act in regard to the levy of the tax, and the use and expenditure of the money to be raised thereby, is merely a direction to the municipal corporation, and not an absolute provision for the collection of the tax by the legislature itself. There must be legislative authority, given to the municipal corporation to incur the debt, but the provision for its collection must be made by the municipal corporation. It follows that the portions of the act in question, as embodied in sections 1 and 3 above quoted, may be eliminated from the act, and yet leave the balance of it complete and symmetrical. The act, in granting authority to the town to issue the bonds and to levy the tax, is valid even though the direction to the municipality as to the amount of the tax to be levied and collected, and the manner of its use, is invalid. The elimination of the invalid portions as thus indicated, and the substitution therefor of the constitutional provision, which is self-executing, and is read into the act as a part thereof by the constitution, make the act a valid act, so far as this objection to it is concerned. The language of the Supreme Court of the United States in *City of East St. Louis* v. *Amy, supra,* is that "this provision for the tax was written by the constitution into every law passed thereafter by the legislature allowing a debt to be incurred." The act of 1901 has been passed by the legislature allowing these bonds to be issued, and the tax for their collection to be levied, since the adoption of the constitution of 1870, and, therefore, comes within the scope and meaning of the doctrine announced. It is furthermore said in *City of East St. Louis* v. *Amy,* as follows: "It was made by the people a part of the fundamental law of the State that every debt incurred thereafter by a municipal corporation under the authority of law should carry with it the constitutional obligation of the municipality to levy and collect all the necessary taxes required for its payment." The issuance of the bonds, provided for by the act of 1901, is a debt

incurred by the town thereinafter referred to, and necessarily carries with it the constitutional obligation already mentioned, whether such obligation is embodied in the directions of the act to the municipality in regard to the levy and collection of the tax, or not. It is true that, where several provisions of an act "are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and, if all could not be carried into effect, the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them." (Cooley's Const. Lim.— 1st ed.—*pp. 178, 179). We see nothing in the character of the act itself, or of any of its provisions, to indicate that its parts are so mutually connected with and dependent on each other, as that the elimination of the objectionable directions, and the substitution therefor of the constitutional provision, make the act inconsistent with itself, or opposed to the intention of the legislature. It can as well be inferred from the language in question, that the intention of the legislature was to direct the levy and collection of a tax, sufficient to pay all of the objects indicated, to-wit, the governing, maintaining and improving of the parks, and the discharge of the necessary and incidental expenses incurred in and about their management, and also to pay the interest and principal of the bonds in question, as that it was their intention that only the remainder of the money so raised should be applied to the payment of the interest and principal of the bonds after an expenditure for the management, maintaining and improvement of the parks. There is no allegation in the bill in question to the effect that the levy of the tax of one mill, provided for by the act, would not be sufficient for all the objects in question, so as to leave enough to pay in full the interest and principal of the bonds.

As has already been said, however, the provision of the constitution is not that the legislature shall make the provision in question, but that the municipal corporation incurring the indebtedness shall do so. The bill here alleges that, before or at the time of incurring the indebtedness in question, the town of West Chicago passed an ordinance, the fourth section of which is quoted in the statement preceding this opinion. Section 4 of the ordinance makes such a provision, as is required by section 12 of article 9 of the constitution. It says that "there shall be levied and collected upon the taxable property in the town of West Chicago according to the valuation of the same as made for the purpose of State and county taxation, a direct annual tax sufficient to pay the interest on said bonds as it falls due, and also to pay and discharge the principal thereof within twenty years from the date of issuing said bonds." By the passage of this portion of section 4 of the ordinance, the town of West Chicago did provide for the levy and collection of a tax "sufficient" to pay the interest and principal aforesaid. It is true that, in the last sentence of section 4 of the ordinance, the following language is used: "And to that end the corporate authorities of the town of West Chicago hereby bind themselves to levy in each year, a direct annual tax not to exceed one mill on the dollar upon the taxable property in said town as aforesaid, to be used and expended by said West Chicago Park Commissioners in paying the interest and principal of said bonds as the same shall mature and become due." It is evident that the town authorities intended to provide for the levy and issuance of a tax sufficient to pay interest and principal, and that they were of the opinion that the levy in each year of a direct annual tax not to exceed one mill on the dollar, etc., would be sufficient for that purpose. If the levy of a tax not to exceed one mill on the dollar, etc., should not be sufficient for the purpose stated, then, under the requirement of the constitution, the corporate authorities would be obliged to levy such tax, as would be sufficient for such pur-

pose.   In other words, the provision for the levy and collection of a sufficient tax is complete, even though the corporate authorities pledge themselves to levy no more than a tax of not to exceed one mill on the dollar, etc., in the belief that such amount would be sufficient to pay the interest and principal of the bonds.

'The corporate authorities, in providing for the levy and collection of a sufficient tax to pay the interest and principal of the bonds, as such provision is embodied in section 4 of the ordinance passed by them, provided for the levy of a tax not to exceed one mill on the dollar, etc., to be used and expended by the park commissioners in paying the interest and principal of said bonds, and not to be used and expended in paying for the governing, maintaining, improvement and management of the parks.   The act of the legislature directed that the corporate authorities of the town, in addition to the amount of a tax then authorized by law to be levied and collected for park purposes, should levy and collect annually a tax not to exceed one mill on the dollar, etc.   The tax of one mill on the dollar to be levied and collected annually was to be in addition to the tax already authorized to be levied and collected for park purposes.   The ordinance, in providing that this additional tax should be applied to the payment of the interest and principal of the bonds, more strictly complies with the constitution than the act itself, because the latter directs the use and expenditure of the tax for other purposes as well as for the payment of the interest and principal of the bonds.

For the reasons above stated, we are of the opinion that it is unnecessary to hold the act of 1901 invalid because of any supposed conflict with section 12 of article 9 of the constitution in the respect last above indicated as to the sufficiency of the tax, directed to be levied and collected.

*Third*—It is next claimed on the part of the appellant that the act of May 10, 1901, above referred to, is a local or special law, and is in contravention of article 4, section 22,

of the constitution of 1870 which provides as follows: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: for * * * regulating county and township affairs; * * * incorporating cities, towns or villages, or changing or amending the charter of any town, city or village." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 134).

The constitution of 1870 does not prohibit the passage of all "local or special laws" as such. It only prohibits the passage of local or special laws in reference to the particular subjects, mentioned in section 22 of article 4. The appellant claims that the act here under consideration violates that part of section 22, which forbids the passage of a local or special law "regulating * * * township affairs." The first question, then, which arises, is whether the act of 1901 is an act regulating township affairs. If it is not, it is not necessarily a local or special law, because section 22 of article 4 does not prohibit the passage of local or special laws in regard to parks, or regulating the affairs of parks. It is insisted on the part of the appellees, that the act in question is an act, which makes the issuance of the bonds therein provided for and the levy and collection of the tax therein mentioned a park or State function, and not a township affair. It is true that, under the provisions of the act, the town authorities, designated as the town clerk, assessor and supervisor, are to issue the bonds, and levy the taxes necessary to pay the interest and principal thereof, upon the written request of the park commissioners; and that the bonds, when issued, are to be delivered to the board of park commissioners to be by them sold, and to be used by them in the purchase and improvement of blocks, lots and parcels of land necessary for small parks or pleasure grounds; and, also, that the money, raised by the tax, is to be used in the government, maintenance, improvement and management of the parks, not by the township authorities, but by the park commissioners. It is true, also, that, under section 2 of the

act, the bonds, after being signed by the corporate authorities of the town, and after being delivered to the park commissioners, must have endorsed on each one of them by such park commissioners a certificate, to the effect that they were issued by the corporate authorities of the town upon the request of the board of park commissioners. Stress is also laid upon the fact, that the bonds shall be payable at such place and at such time, not exceeding twenty years from the date of their issue, as the board of park commissioners may determine. It is said that these, and other provisions of the act, show that the issuance of the bonds is not for township purposes, but for park purposes, and that, therefore, the act is not an act regulating township affairs. We are unable to concur in this view.

The bonds, provided for by the act, although they are to be issued upon the written request of the board of park commissioners, are to be issued in the name of the town. The total indebtedness, including bonds, which is required not to exceed five per cent, etc., is the indebtedness of the town, and not of the park commissioners. The tax to be levied is to be levied by the town authorities, and not by the park commissioners. The bonds are to be signed by the corporate authorities, not of the park commissioners, but of the town, and in the name of the town. A fair construction of the act leads to the conclusion that the town authorities are not obliged to obey the written request of the park commissioners for the issuance of the bonds, but have the power to veto their issuance. The property to be levied upon for the collection of the tax is the property in the town, and the indebtedness, which is limited, is an indebtedness which shall not exceed five percentum of the value of the taxable property of the town, as ascertained by the last assessment for State and county taxes previous to the issue of any such bonds. The park commissioners are required to endorse upon each bond a certificate, that the bonds were issued by the corporate authorities of the town upon the request of the board of

park commissioners. All these requirements of the act of 1901 indicate beyond question that, under this act, the issuance of these bonds, and the levying of the tax for their collection, are township affairs.

In *Hankins* v. *Mayor, 64* N. Y. *22,* the Supreme Court of New York said: "County affairs are those relating to the county in its organic and corporate capacity, and included within its governmental or corporate powers." The acts, required of the corporate authorities of the town mentioned in the act of 1901, are certainly such acts as come within the corporate capacity of the town, and are included within its corporate powers. The incurring of indebtedness by a town, its issuance of bonds, its signing of the same, and the levy of taxes upon the property of the tax-payers in the town are acts which certainly are embraced within the corporate powers of the town. In *Morrison* v. *Bachert,* 112 Pa. St. 322, the Supreme Court of Pennsylvania, having occasion to define the affairs of a county, said: "A constitution is not to receive a technical construction, like a common law instrument or statute. It is to be interpreted so as to carry out the great principles of government, not to defeat them. * * * When it speaks of the affairs of a county, it means such affairs as affect the people of that county. The prothonotary is a county officer; while his fees, when received by him, are his private property, they are paid by the people of the county, not indeed assessed upon all the tax-payers as a salary would be, but upon all citizens who have business with the office or litigation in the courts. As every citizen of the county may be affected by such an act, and most of them surely will be, how can we say that it concerns no one but the officer entitled to the fees?"

Again, in *Frost* v. *Cherry,* 122 Pa. St. 426, the Supreme Court of Pennsylvania referred to its former definition, as embodied in *Morrison* v. *Bachert, supra,* and said: "When it, [the constitution], speaks of the affairs of a county, it means such affairs as affect the people of that county." In

the case at bar, the duties imposed upon, and the acts required of the corporate authorities of the town by the act of 1901 certainly affect the people of the town, and, therefore, must be regarded as coming within the definition of "township affairs." Nothing could more seriously affect the people of the town than the incurring of indebtedness, and the execution of bonds, and the levying and collecting of taxes by the corporate authorities of the town, in which such people reside. In *Devine* v. *Comrs. of Cook County,* 84 Ill. 590, an act, which gave power to counties of a certain population to issue bonds for erecting public buildings, etc., was held to be legislation "regulating county affairs."

For the reasons above stated, we are of opinion that the act in question is an act, which regulates township affairs.

*Fourth*—That the act is local and special is clear from the fact, that it refers to only one town, to-wit, the town of West Chicago. The language of section 1 of the act, as quoted in the statement preceding this opinion, is that "in any town which is now included within the limits of any city in this State where the boundaries and limits of any such town are co-extensive with the boundaries and limits of any park district, in which a board of park commissioners shall now exist,  *  *  *  the corporate authorities of such town, (meaning the town supervisor, clerk and assessor thereof), shall have authority,  *  *  *  to issue bonds in the name of such town," etc. The provisions of the act are limited to a town, included within the limits of a city, and not only so, but to a town where the boundaries and limits of the town are co-extensive with the boundaries of a park district, in which a board of park commissioners shall exist. It seems to be conceded by counsel on both sides, that there is only one town included in a city, whose boundaries and limits are co-extensive with the boundaries and limits of a park district in that town. This description applies to the town of West Chicago, and to no other town in the State. The town of West Chicago is a part of the city of Chicago. The act of

1869, creating the West Chicago Park Commissioners, and other legislation in this State, make it clear that the boundaries and limits of the town of West Chicago were in 1901 when the present act was passed, co-extensive with the limits of the West Chicago park district. Park legislation of the 'State, which need not be here set forth, but much of which is referred to in the exhibits to the bill in this case, reveals the fact, that no other town except the town of West Chicago answers the description in section 1 of the act of May 10, 1901.

The provisions of the act of 1901 can apply to no other town except the town of West Chicago. The act provides that, in a town where the limits of the town are co-extensive with those of the park district, bonds shall be issued and sold, and the proceeds thereof used "for the purchase and improvement of lots, blocks or parcels of land selected as sites for small parks or pleasure grounds." The object of the act is the creation and improvement of certain parcels of land as small parks or pleasure grounds. These parks or parcels of land, so to be used as small parks or pleasure grounds, are to be purchased by the park commissioners of an existing park in a city where the limits and boundaries of the park district are co-extensive with the limits and boundaries of the town. It is difficult to understand what possible connection there can be between the fact, that the limits of the town are co-extensive with the limits of the park district, and the necessity or desirability of having small parks or pleasure grounds. There would seem to be no reason why a park district, whose limits are co-extensive with the limits of a town, should be entitled to have small parks or pleasure grounds, and another park district in the city, whose limits are not co-extensive with the limits of a town, should not have such small parks or pleasure grounds. The distinction is purely arbitrary, and there is no rational ground of excluding from the privilege of having such small parks or pleasure grounds other park districts, whose limits are

not co-extensive with the limits of the town.    The designation of towns as a class, which makes it absolutely certain that but one town of the State may avail of the benefits of the law applicable to such class, would seem to be a mere device to evade the constitutional provision forbidding special legislation.    It has been held that an act of the legislature, which applies to one county only, is special legislation within the meaning of section 22 of article 4; and the same rule, which applies to counties, certainly applies to towns. (*Devine* v. *Comrs. of Cook County,* 84 Ill. 590; *Strong* v. *Dignan,* 207 id. 385).    The act seems to contravene the rule, that there must be a rational ground for legislating in behalf of the objects to which the act applies, and not for others of the same general sort; that is to say, there must be a rational ground for legislating in behalf of one park district, whose limits are co-extensive with the limits of a town, and not for other park districts of the same general sort, whose limits are not co-extensive with the limits of a town.

In some of the cases, the view is taken that, although the provisions of an act may apply only to one object, or one municipality, yet where there are others, upon which it may operate in the future, the law will be held not to be special or local.    In *West Chicago Park Comrs.* v. *McMullen,* 134 Ill. 170, the act there in question applied, on its face, to all cities having parks under the control of park commissioners, and it was objected that the act was in fact applicable only to the conditions existing in the city of Chicago, but this court there said (p. 176): "It is general in its terms and applies to all cities of the State which, at the time of its passage, had parks under the control of park commissioners, or that might at any time thereafter so have parks.    If, because only a single city had such parks, an act general in its application to all cities would be local or special legislation, no valid act could be passed affecting such existing parks; and it would necessarily result from such holding, that substantially all of the park legislation, enacted since the adop-

tion of the present constitution, should for the same reason have been held invalid. * * * A law may be general, and yet be operative in a single place. It is not requisite that it should be presently applicable to every person, or to every city, within the State." In *People* v. *Onahan,* 170 Ill. 449, this court said (p. 459) : "Although the court might know judicially that at present no county in the State but Cook has the required population, it is matter of common knowledge, which, it is fair to assume, influenced the legislature, that other counties are near to the prescribed limit in population, and contain cities of such size and density of population that the method of selecting the jury list applicable to less populous communities cannot, with due regard for the public welfare, continue to be applied." (See also *People* v. *Comrs. of Cook County,* 176 Ill. 576; *Burton Stock Car Co.* v. *Traeger,* 187 id. 9; *People* v. *Hoffman,* 116 id. 587; *Bertrand* v. *Taylor,* 87 id. 235).

The act of 1901 does not designate a town, included within the limits of a city, in which a board of park commissioners shall exist, but a town, included within the limits of a city, where the boundaries and limits of the town are co-extensive with the boundaries and limits of the park district, thus narrowing the description, so as to apply to only one town, to-wit, the town of West Chicago, and to exclude all other towns. Not only is this so, but it designates a town, "which is *now* included within the limits of any city," etc.; and it refers to a town "in which a board of park commissioners shall now exist;" and it also provides that corporate authorities of such town shall have authority to issue bonds, etc., "upon the written request to that effect of any board of park commissioners, or the successors thereof, which shall now exist within any such town." The use of the word, "now," in section 1 of the act excludes the idea that the act was intended to apply to the future, or to any town, which in the future might have its limits co-extensive with the limits of the park district. The provisions of the

act are limited to the present, and to a town now complying with the description indicated. Therefore, the decisions referring to such towns, as might in the future come within the designation specified in the act, can have no application to the act now under consideration. For the reasons thus stated, we are of the opinion that the act of May 10, 1901, is unconstitutional as being a local or special law, and as being in conflict with section 22 of article 4 above quoted.

We are reminded that, if this court holds the present act to be unconstitutional, it will destroy the validity of bonds, which have been issued from time to time under acts, containing similar provisions with those which make the present act a local or special law. It is true that other park acts have been passed within recent years, which provide for the issuance of bonds, and which use the same language employed in the act now under consideration, to-wit, the following language: "In any town, which is now included within the limits of any city in this State, where the boundaries and limits of any such town are co-extensive with the boundaries and limits of any park district, in which a board of park commissioners shall now exist." These other acts are not now before us for consideration, and we pass no opinion upon their constitutionality, or upon the validity of the bonds issued under them. It is to be observed, however, that the acts, containing the language thus quoted, which went into force before the act of May 10, 1901, was passed, were acts which provided for the issuance of bonds and the sale thereof, and for the use of the proceeds of such sales, "for the improvement of any land now held, controlled and maintained by any such board of park commissioners for park and boulevard purposes." The difference between the present act, and these other acts referred to by counsel, is that here the purpose of issuing and selling the bonds is to provide for the purchase and improvement of lots, blocks or parcels of land, selected as sites for small parks or pleasure grounds. That is to say, the present act provides for the

215 21

purchase of land with a view of creating and improving new parks, which are called "small parks or pleasure grounds." The other acts referred to do not provide for the issuance and sale of bonds to raise money for the purchase of new parks or small parks or pleasure grounds, but for the improvement or completion of parks already existing, and already controlled and maintained by a board of park commissioners. There is a difference between the raising of money for the purpose of maintaining an existing park, and raising money for the purpose of purchasing and developing a new park. This constitutes the distinction between the present act and the acts to which counsel refer. Whether or not this distinction would relieve the acts thus referred to from the effect of the views herein expressed, is a question which we do not wish to be understood as deciding. We merely point out that such distinction exists, and its effect is reserved for future consideration, in case any question requiring its consideration hereafter arises.

For the reason that the act of May 10, 1901, is an act regulating township affairs, and is a local and special law regulating township affairs, we are of the opinion that the act is invalid, as being in violation of section 22 of article 4 of the constitution. Accordingly, we hold that the court below erred in sustaining the demurrer to the bill, and dismissing the same for want of equity.

Therefore, the decree of the Superior Court of Cook county, sustaining the demurrer to the bill, and dismissing the same for want of equity, is reversed, and the cause is remanded for further proceedings consistent with the views herein expressed.                    *Reversed and remanded.*