JOHN GOODWINE *et al.* Appellants, *vs.* THE COUNTY OF
VERMILION *et al.* Appellees.

*Opinion filed December 22, 1915.*

1. CONSTITUTIONAL LAW—*unearned interest is not an "indebt-edness."* In determining whether a proposed county bond issue will exceed the constitutional limit on the indebtedness which the county may incur, the interest to accrue upon such bonds is not to be counted.

2. COUNTIES—*section 56 of act relating to counties is in force.* Section 56 of the act relating to counties, which gives the county board a discretion to aid any town in the construction of roads and bridges and authorizes the county board to levy a tax to aid in their construction, was not repealed by the Roads and Bridges act of 1913 and is still in force.

3. SAME—*county board has power to submit question of bond issue to vote of people.* Section 40 of the act relating to counties authorizes the board of supervisors to submit to the legal voters of the county the question of issuing bonds whenever the board shall · deem it necessary to issue bonds to enable it to perform any of the duties imposed upon it by law.

4. SAME—*a duty is imposed by law even though its performance is discretionary.* The duties imposed by law upon the county board include not only those things which the county board is directed to do by the express mandate of the legislature, but also those things the legislature has authorized the county board to do if required by the public interest.

5. SAME—*when county board is authorized to submit question of bond issue to a vote.* If the county board determines that the public interest requires the county to aid in the construction of roads and bridges then the duty to render such aid is one imposed by law, and the board is authorized by section 40 of the act relating to counties to submit to the legal voters the question of issuing bonds to aid in the construction of roads and bridges.

6. SAME—*county board may aid in constructing system of roads throughout county.* The county board, under section 56 of the act relating to counties, may aid any township in the construction of roads and bridges or it may aid one or more townships or all the townships, and if it determines upon such aid it is not a valid objection that the aid takes the form of concentrating the expenditure in the complete construction of a definite portion of road in each township, that the aid is offered by the county board and not

requested by the townships, or that the work is to be done under the supervision of the county and by its agents.

7. SAME—*section 56 of act relating to counties is not affected by section 126 of the Roads and Bridges act.* Section 56 of the act relating to counties, which authorizes a county to aid in the construction of roads and bridges, was not repealed, limited or modified by section 126 of the Roads and Bridges act of 1913, as the limitations therein contained refer only to proceedings had under that act.

APPEAL from the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding.

WALTER T. GUNN, (J. W. KEESLAR, of counsel,) for appellants.

JOHN H. LEWMAN, State's Attorney, REARICK & MEEKS, ACTON & ACTON, and HALL & HOLADAY, (O. M. JONES, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

John Goodwine and other residents, property owners and tax-payers of the county of Vermilion filed in the circuit court a bill against the county, the chairman of the board of supervisors and the county clerk, the purpose of which was to enjoin the issue and sale of bonds amounting to $1,500,000 and the collection of a tax for the payment of them. An answer was filed, the cause was heard and a decree was rendered dismissing the bill for want of equity, from which the complainants have appealed.

The proposed bond issue purported to be for the purpose of aiding in the construction of roads and bridges in the county, and it appears from the pleadings, the exhibits and a stipulation in regard to the facts upon which the cause was heard, that in May, 1914, a committee of the county board was appointed to consult with the State Highway Commission and its engineers relative to building a system of hard roads in the county to connect all the towns of the county with the county seat. The committee reported

recommending the appropriation of funds to the amount of
$1,500,000 to aid in the construction of roads and bridges
in the county, the levy of necessary taxes for their pay-
ment, and the submission to the voters of the county, at
the election in November, of the question of issuing county
bonds for such purpose. The board of supervisors there-
upon adopted a resolution that the sum of $1,500,000 be
raised by the issuing of county bonds to that amount for
the purpose of aiding in the construction of roads and
bridges in the county in accordance with the provisions of
the report of the committee; that such sum of money be
appropriated from time to time, as needed, in the manner
provided by law, for the purpose of aiding in the construc-
tion of such roads and bridges in the county; that the nec-
essary taxes required to pay off the principal and interest of
such bond issue be levied, assessed and collected from time
to time in the manner required by law, and that the ques-
tion of issuing said county bonds be submitted to the legal
voters of the county at the election in November, 1914. A
majority of the votes at the election having been cast in
favor of the issue of the bonds, a committee of the county
board was authorized to advertise for bids on them, to be
received on May 17, 1915. Before that date the bill for an
injunction in this case was filed. After the filing of the bill
a curative act was passed by the legislature for the purpose
of legalizing all elections where the people have voted in
favor of issuing bonds for the purpose of aiding in the
construction of roads and bridges in any county or other
municipality and the bonds issued in pursuance of such elec-
tions. (Laws of 1915, p. 581.)

The appellants contend that the proposed bond issue was
in violation of that provision of the constitution which pro-
hibits any county from becoming indebted to an amount
exceeding five percentum of the value of the taxable prop-
erty therein; that the board of supervisors had no au-
thority to call the election or issue bonds for the purpose

of aiding in the construction of roads and bridges in the county; that the bonds were not issued for the purpose of aiding any township in the construction of roads and bridges in the county but as an independent work of the county, and that the curative act just referred to is inoperative and of no effect.

The assessed value of the real and personal property of the county was $36,402,538, five per cent of which is $1,820,000. It is stipulated that the aggregate amount of interest on the bonds during the period of twenty years to be paid by the county would amount to $570,000. While the principal of the bonds is less than the limit of indebtedness which the county may incur, if the interest is to be considered in determining the amount of such indebtedness that amount will exceed the constitutional limit by $250,000. The appellants insist that the liability of the county for the interest is the same as its liability for the principal of the debt; that the amount of the indebtedness to be incurred by the issue of the bonds will be the full amount of the principal and interest for the time the bonds have to run, and that the whole amount of such indebtedness will be incurred at the time the bonds are issued. The appellees contend that interest is a mere incident of the principal and cannot be regarded as a part of the indebtedness until it has accrued. We have held that accrued interest is a debt within the constitutional limitation, (*Stone* v. *City of Chicago,* 207 Ill. 492,) but the question in regard to accruing interest has never been decided by this court. The doctrine is stated in McQuillin on Municipal Corporations, (vol. 5, sec. 2224,) that "interest is not a debt, within the meaning of debt-limit provisions, until it is earned and becomes due, and in determining whether an indebtedness will be created in excess of the debt limit, unearned interest can not be added to the principal. The authority granted by the constitution or statute to contract a debt refers to the amount of the debt at the date at which it is created and

has no reference to the amounts of interest which accrue thereafter. On the other hand, interest which has become due and payable is a part of the existing indebtedness in figuring the total amount of municipal indebtedness." The cases of *Ashland* v. *Culbertson,* 103 Ky. 161, *Finlayson* v. *Vaughn,* 54 Minn. 331, and *Herman* v. *City of Oconto,* 110 Wis. 660, sustain this statement. In the last case it is said: "Interest is not a debt, within the meaning of the constitution, until it is earned and becomes due." This is in accordance with the ordinary view, which, in estimating the liabilities of individuals or corporations, does not take into consideration interest to accrue on unmatured obligations. Such interest is not to be regarded as a part of the indebtedness of municipal corporations within the constitutional prohibition.

The appellees claim that the action of the supervisors was in accordance with the power conferred by sections 56 and 40 of the act in relation to counties, while the appellants contend that those sections confer no authority on the board of supervisors to call an election for the voting of bonds to build hard roads. The sections are as follows:

"Sec. 56. Said board shall have power to appropriate funds to aid in the construction of roads and bridges in any part of the county, whenever a majority of the whole board of the county may deem it proper and expedient."

"Sec. 40. When the county board of any county shall deem it necessary to issue county bonds to enable them to perform any of the duties imposed upon them by law, they may, by an order, entered of record, specifying the amount of bonds required, and the object for which they are to be issued, submit to the legal voters of their county, at any general election, the question of issuing such county bonds. The amount of the bonds so issued shall not exceed, including the then existing indebtedness of the county, five percentum on the value of such taxable property of such county, as ascertained by the assessment for the State and

county tax for the preceding year. Said vote shall be by ballot, on which shall be written or printed 'For county bonds,' or 'Against county bonds,' and if a majority of the votes at such election on that question shall be 'For county bonds,' such county board shall be authorized to issue such bonds of not less than twenty-five dollars ($25), nor more than one thousand dollars ($1000) each, payable respectively, in not less than one nor more than twenty years, with interest payable annually or semi-annually, at the rate of not more than eight per cent per annum."

Section 56 was not repealed by the passage of the Road and Bridge law of 1913 but is still in force, and confers upon the county board power to levy a tax to aid in the construction of roads in the county. (*People* v. *Jacksonville and St. Louis Railway Co.* 265 Ill. 550; *People* v. *Wabash Railroad Co.* id. 530.) This provision gives the county board a discretion to aid any town in the construction of roads and bridges. Section 40 authorizes the board of supervisors to submit to the legal voters of the county the question of issuing bonds whenever they shall deem it necessary to issue bonds to enable them to perform any of the duties imposed upon them by law.

The appellants argue that a difference is recognized in the statute between duties imposed by law and powers conferred upon the county board; that the powers conferred by section 25 on the county board are to be exercised in the discretion of the county board, and that the duties referred to in section 40 are only those specified in section 26 of the act, stating that it shall be the duty of the county board of each county to do certain things. In our judgment there is no such distinction. The duties imposed upon the county board by law include not only those things which the county board is directed to do by the express mandate of the legislature, but also those things for the performance of which the legislature has conferred power upon the county board when the public interest requires that

those things should be done. The county has no powers except those expressly conferred upon it by statute or necessary for the performance of the powers which are expressly conferred. Whatever duty it owes is necessarily a duty imposed by law. Whenever the public interest requires that an act which the county board is authorized to do should be done and it is within the power of the county board to do it, then it is the duty of the county board to do that act. The duty may be one which cannot be enforced by *mandamus*. It may not be absolute but relative, dependent upon time, place, manner or condition. The financial condition of the county may make impossible what would otherwise be a pressing duty, and several urgent demands may require the postponement of one or more in favor of another. When the county board, however, deems it necessary, to enable it to perform any of its duties, to issue county bonds, it may submit the question to the legal voters of the county. When the board arrived at the determination that the public interests of the county demanded that it should aid in the construction of roads and bridges, then it was the duty of the county board to aid in their construction, and that duty was imposed upon it by law. Under those circumstances section 40 expressly authorized the submission to the people of the question of issuing bonds for the purpose of raising money.

Sections 27 and 28, to which the appellants refer, have no application to this situation. Those sections refer only to a case where the county board shall deem it necessary to assess taxes the aggregate of which shall exceed the rate of seventy-five cents on each $100 valuation. No such excessive rate is necessary in the present case. The yearly installment of the bonds, together with interest on the whole amount, is only half of seventy-five cents on each $100 valuation, as shown by the record.

The appellants contend that the bonds are proposed to be issued, not for the purpose of merely aiding in building

roads and bridges, but for the purpose of building a complete and comprehensive system of hard roads connecting practically all the cities and villages of the county with the county seat, consisting of approximately 170 miles of roads; that it is no part of the scheme that the villages or townships shall contribute or pay, in their corporate capacity, any of the cost of said roads but that all are to be built at the expense of the county; that the purpose of the county is to completely build the roads and pay for them, including the cost of engineering, excavating, paving, furnishing material, work and labor, making a complete highway without any of the cost thereof being assessed against or paid by the townships, and that although the words "for the purpose of aiding in the construction of roads and bridges" are used in the proceedings, their use is merely a pretext and device to make it a legal duty imposed upon the county board to call an election to authorize said bonds.

It appears from the record that there are eighteen townships in Vermilion county and about 1558 miles of public roads; that it is intended to construct about 175 miles of highway by improving less than one-half of their width and building a few bridges; that the part of said roads which the county proposes to improve is a strip sixteen feet wide; that there will be constructed in each township from two to eighteen miles of public highway, except in the town of Danville, in which there will be a little over one mile of road outside the city of Danville; that the roads are to be constructed of concrete or brick, ten feet wide, with gravel or rock shoulders three feet wide on each side; that the old bridges are to be used and that all the roads are to be improved according to the plans and specifications approved by the State Highway Commission. It is averred in the answer that the towns will provide a large part of the grading and drainage for said system; and that some of the towns will furnish and pay for some of the gravel to be used in the shoulders of a part of the road. It is manifest

that the work is being done according to a plan or scheme
for the systematic improvement of the roads in such a way
as to connect all parts of the county with the county seat;
that the scheme was adopted by the county board of its
own initiative, without the action or petition of the com-
missioners of highways of the various towns or of any of
them, and that the work is to be done under the author-
ity of the board of supervisors and the supervision of its
agents, according to plans and specifications to be approved
by the State Highway Commission, but it does not follow
that the funds are not appropriated to aid in the construc-
tion of roads and bridges in the county. Section 56 of the
act in relation to counties has been, in substantially its pres-
ent form, a part of the statute since 1851, when it appeared
in the act to provide for township organization. (Laws of
1851, p. 51.) Prior to 1849 the counties in the State had
exclusive charge and control of all the roads within their
respective boundaries, and the public highways were laid
out, constructed, altered, maintained and repaired under the
direction of the county commissioners' court. In 1849 a
township organization law was passed, which placed the
roads within each town under the jurisdiction of commis-
sioners of highways. (Laws of 1849, p. 190.) A new law
on the same subject took its place in 1851, containing the
provision which is now section 56 of the act in relation to
counties. In the revision of the statute, in 1874, this sec-
tion was transferred to the act in relation to counties.
Since the first township organization act the care of the
roads in counties under township organization has been a
charge upon the townships in which they were situated and
not on the counties, and the highway commissioners of the
towns have had jurisdiction over them. The section of
the statute which authorized county boards to appropriate
funds to aid in the construction of roads and bridges in
the county made no provision as to how, when, where,
why, to what extent, under what circumstances or on whose

request they should give aid. It did not require that the
aid should be upon the application of the town, or of the
highway commissioners, or the petition of individuals. The
matter was left entirely to the discretion of the board as
to when it would aid, where, to what extent and in what
manner. The board had a right, if in the judgment of a
majority of its members the public interest required it to
do so, to offer aid without being asked, and to aid in one
township or more and not in others. If the county board,
acting in good faith, according to the best judgment of its
members as to the requirements of the public interest, should
undertake to aid all the towns in the county in a system-
atic manner, so as to bring about the building of a con-
nected system of highways through every township leading
to the county seat, no valid objection could be taken to
such action. It may help any township. It may help each
township. It may help all the townships. Why may it
not help all the townships at the same time and in such a
way as to produce a connected system of roads? The 175
miles of road proposed to be constructed are slightly more
than eleven per cent of the roads in the county. The pro-
portion in each township, no doubt, varies, in some cases
being more and in others less than eleven per cent. The
form which the aid has taken is the construction by the
county of a part of the highways which the townships were
required to maintain. In fact, the part proposed to be con-
structed by the county is less than half the width of the
road. Why may not the county, under the statute, assist
in the construction of the roads in a township by assum-
ing the exclusive burden of building a definite portion of
the roads of the township as well as by assuming the bur-
den of paying a portion of the cost of all the roads? It
might well be that the county would be willing to assist in
the building of roads in all the townships according to a
systematic plan, under one management and direction, when
it would not be willing to contribute to any township with-

out such plan. It cannot be said that the plan was not to aid the townships in the construction of roads because the plan originated with the county. It relieved the townships of the cost of construction of so much road. If the county did the whole of the work it was an aid to the township in relieving it of so much of its municipal burdens. It might be that the consent of the township authorities would be necessary to the construction of the particular road desired to be improved, but it is not necessary that any contract should have been entered into by the authorities of the town and the county, or any consent procured, before the county undertook to raise the money to carry out the scheme which it had determined upon. If the county board had, by agreement with the commissioners of highways of any township, agreed to assist the commissioners by the construction of a certain road in the township, it would hardly be contended that it was not within the power conferred by the legislature in doing so. If it might assist one township in this way then certainly it could assist every other township in the same way. If in so assisting, the roads were selected so as to make a connected system of highways connecting the townships with one another and with the county seat, this circumstance would constitute no valid objection to the aid furnished any township or all of them. The essential thing is that the county board had the right to aid in the construction of highways in any township in the county or all of them, and it is not a valid objection to such aid that it took the form of concentrating the expenditure in the complete construction of a definite portion of road in each township, that the aid was offered by the county and not requested by the township, or that it was done under the supervision of the county and by its agents.

Section 126 of the Road and Bridge act is as follows:

"Sec. 126. The several county boards of counties are hereby vested with the same powers for constructing, re-

pairing and maintaining gravel, rock, macadam or other hard roads in their respective counties as the commissioners of highways acting severally or together or with the several county superintendents of highways according to the provisions of this act. The county board of any county may also assist any town or road district therein in the construction of a hard road under the provisions of this act, to the extent of twenty-five per cent of the cost thereof: *Provided, however,* that the question of raising a special permanent road tax or of issuing bonds for the purposes set forth in this act, shall first be submitted to the legal voters of the county, at any regular election for county officers, on the petition of one hundred land owners who are legal voters in said county, to the county clerk, previous to time of posting the notices for said county election, said petition and notices to designate the road or roads to be improved and number of years, not to exceed five, for which the tax shall be continued."

The powers granted by this section refer only to the constructing, repairing and maintaining of gravel, rock, macadam or other hard roads according to the provisions of the Road and Bridge act. The limitations imposed apply only to proceedings under that act, and the section does not repeal, limit or modify section 56 of the County act.

It is not necessary to consider the effect or validity of the curative act.

The action of the board of supervisors was within the power conferred upon them by the statute.

The decree of the circuit court was right, and it will be affirmed.                                        *Decree affirmed.*