(No. 13477.—Reversed and remanded.)

THE PEOPLE *ex rel.* Hubert E. Schaumleffel, State's Attorney, Plaintiff in Error, *vs.* A. J. HOBY HOERR, Defendant in Error.

*Opinion filed October 23, 1920.*

1. COUNTIES—*county must have express authority to levy taxes.* County authorities must have express authority, either under the constitution or an act of the legislature, to levy and collect taxes, and they have no right to levy taxes for county purposes at a rate exceeding that fixed by law.

2. SAME—*tax to pay bonds and interest is not subject to reduction.* Under section 2 of the act relating to the scaling of tax rates, as amended in 1919, (Laws of 1919, p. 772,) the amount levied by a county to pay the principal and interest on bonded indebtedness cannot be diminished by the reduction of any tax levy.

3. SAME—*constitution requires levy of a tax sufficient to pay bonds and interest.* Under section 12 of article 9 of the constitution, which is self-executing, a county, when it incurs an authorized debt, must provide for a direct annual tax sufficient to pay the interest as it falls due and to discharge the principal within twenty years, and the legislature has no power to establish any limitation on the rate of taxation which will in any way nullify such constitutional provision.

4. SAME—*total tax rate for county purposes cannot exceed fifty cents on the $100 valuation.* Under the amendment in 1919 of sections 25 and 27 of the Revenue law, (Laws of 1919, p. 741,) the total rate for county purposes, in the absence of a vote of the

people authorizing an additional tax, cannot exceed the rate of fifty cents on the $100 valuation, but the amount required to pay the interest and principal on bonded indebtedness of the county must be extended and collected without reduction.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

HUBERT E. SCHAUMLEFFEL, State's Attorney, (A. B. DAVIS, of counsel,) for plaintiff in error.

BARTHEL, FARMER & KLINGEL, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Hubert E. Schaumleffel, State's attorney of St. Clair county, the plaintiff in error, filed a petition, and later an amended petition, in the circuit court of said county for a writ of *mandamus* to compel defendant in error, A. J. Hoby Hoerr, as county clerk, to determine the rate per cent upon the proper valuation of all taxable property in said county in the year 1920,—and from year to year thereafter until certain hard road bonds and interest thereon have been fully paid,—that will produce the amount necessary to pay said bonds and interest thereon as certified by the board of supervisors, and then to extend the same upon the tax books of the county without reduction or scaling, and to do all things required of him under the law pertaining to the levy and collection of taxes sufficient to pay said bonds and interest. The court sustained a demurrer to the amended petition and dismissed it.

The amended petition contains the following averments: On November 7, 1916, at an election held in said county in pursuance of the Road law then in force, the voters of the county authorized an issue of $1,500,000 of bonds for the construction of State aid roads. At the same election the electors voted against an additional tax over the county's limitation to pay the principal and interest on the bonds.

At the June meeting of the county board in 1917 a resolution was passed authorizing and directing the issuance of $400,000 of said bonds, consisting of eight hundred bonds of $500 each, numbered 1 to 800, inclusive, dated June 1, 1917, and bearing five per cent interest, payable semi-annually. Twenty thousand dollars of the bonds were to become due on June 1 in each of the years 1918 to 1937, inclusive. The board by its resolution provided for the payment of the principal and interest of the bonds as the same should come due, by setting forth the amount of principal and interest due for each of said years and directing that an annual tax upon all the taxable property of the county sufficient to produce said amount should be levied and collected. On September 9, 1919, the county board passed a resolution reciting the issuance of $400,000 of the bonds and that it was necessary to issue $540,000 more of the $1,500,000 of bonds to continue the work of constructing the roads. The board authorized and directed the issuance and sale of the additional $540,000 of bonds, and provided for a direct annual tax levy to pay the principal and interest of the same in the same manner as for the first series, the latter series of bonds being payable in the years 1919 to 1936, both inclusive, in annual payments ranging from $57,000 down to $31,500. Of the latter series of bonds $510,000 were sold, making the total amount of the bonds sold $910,000. The full amount of fifty cents on the $100 valuation of the taxable property of the county is required to be levied and collected to meet the current expenses of the county and interest. The county board of said county duly appropriated the sums necessary to meet the obligations of the county in the payment of the road bonds and interest and certified the same to the county clerk, and ordered and demanded of him that he extend upon the tax books of the county a sufficient rate upon the proper valuation of the taxable property to produce and to pay the amount to become due thereon, without reduction, and the clerk refused,

and still refuses, to comply with the order of the board and stated that he would reduce said sum and subject the same to the scaling process. It is averred that the county of St. Clair is not indebted to the amount of the constitutional limitation, and that it will not be necessary to exceed the rate of seventy-five cents on the $100 valuation of the taxable property of the county if defendant in error, as directed, should determine and extend upon the tax books, without reduction or scaling, the rate required to pay the principal and interest of the bonds. The county board, at its February meeting, 1920, directed plaintiff in error, as State's attorney, to institute this suit to compel defendant in error to comply with the demand upon him.

Any county in this State, if it so desires, is authorized to advance money for the purpose of the construction or improvement of its State aid roads, and its county board is vested with full power and authority to take all necessary steps for that purpose, and may appropriate out of any funds in the county treasury not required for other purposes, sufficient money to meet the cost of constructing or improving such State aid roads. It may also, in any manner provided by law for issuing county bonds, issue bonds of the county for the purpose of constructing or improving such roads, provided that the question of issuing such county bonds shall first be submitted to the legal voters of the county at any general election or at a special election called for that purpose; and provided, also, that such bonds shall be issued to mature in not less than ten nor more than twenty annual series, the last series to mature not more than twenty years from the date of issue. (Hurd's Stat. 1915, sec. 15d, p. 2257.)

Section 40 of chapter 34 (Hurd's Stat. 1915, p. 720,) provides that when the county board of any county shall deem it necessary to issue county bonds to enable it to perform any of the duties imposed upon it by law, it may by an order entered of record, specifying the amount of bonds

required and the object for which they are to be issued, submit to the legal voters of the county, at any general election, the question of issuing such county bonds. That section further provides that the bonds so issued shall not exceed, including existing indebtedness, the constitutional limitation of five per cent on the value of the taxable property of the county as ascertained by the assessment for the State and county tax for the preceding year. It further provides that if such bonds are voted by the people, the county board is authorized to issue them in the sum of not less than $25 nor more than $1000 each, payable, respectively, in not less than one nor more than twenty years, with interest payable annually or semi-annually, at the rate of not more than eight per cent per annum. Section 27 of the same act provided that whenever the county board shall deem it necessary to assess taxes the aggregate of which shall exceed the rate of seventy-five cents per $100 valuation of the property of the county, except such excess is to be used for the payment of indebtedness existing at the adoption of the constitution, the county board may, by an order entered of record, set forth substantially the amount of such excess required, the purpose for which the same will be required and the number of years such excess will be required to be levied, and if for the payment of principal or interest, or both, upon bonds, shall in a general way designate the bonds and specify the number of years such excess shall be required to be levied, and provide for the submission of the question of assessing the additional rate required to a vote of the people of the county at the next election for county officers or at any judicial election held in such county after the adoption of the resolution. That section further provided that in case such additional tax is voted by the voters the county board shall then have power to cause such additional tax to be levied and collected in accordance with the terms of such resolution, and that the money so collected shall be kept as a separate fund and disbursed only for the purpose

for which the same was levied. Section 28 of the act pro-
vides that if it shall be deemed necessary to submit to a
vote of the people at the same election the question of is-
suing bonds and raising an additional tax the same may be
included in one proceeding, and in that case the votes in
favor of issuing bonds and levying such additional tax shall
be "For bonds and additional tax," and those against shall
be "Against bonds and additional tax."

From the foregoing provisions of the statute it will be
seen that the county board of St. Clair county had the au-
thority to pass the several resolutions aforesaid in regard to
issuing bonds in aid of State aid roads and to have the peo-
ple vote upon the issuing of such bonds. The bonds hav-
ing been voted by the people as aforesaid are legal and valid
obligations of the county and were duly issued and sold ac-
cording to law. The county authorities, however, failed to
exercise their option, under section 28 of the statute, to
have the questions submitted to the voters to be voted on
to be for and against bonds and additional tax. Had the
questions been so submitted, the bonds, if voted for by the
voters, would have also been payable out of a tax to be col-
lected over and above the constitutional limit of taxation
for the county. Defendant in error makes no question as
to the right of the county board to have the two proposi-
tions, "For bonds" and "For additional tax," voted on sep-
arately. He by his attorneys concedes that all the bonds
in question were properly authorized legal bonds. It is fre-
quently stated in his brief that the bonds are valid and legal
obligations against the county.

Section 8 of article 9 of the constitution provides that
county authorities shall never assess taxes the aggregate of
which shall exceed seventy-five cents per $100 valuation,
except for the payment of indebtedness existing at the adop-
tion of the constitution, unless authorized by a vote of the
people of the county. The legislature, prior to 1919, by
clause 6 of section 25 of chapter 34 of our statutes estab-

lished the same limitation for taxation by counties, and by the same clause limited annual taxes to not exceed one hundred cents on the $100 valuation for the purposes of paying the principal and interest on an indebtedness existing at the time of the adoption of the constitution. In 1915 section 2 of what is known as the Juul law (Hurd's Stat. 1915, p. 2229,) provided that in reducing tax levies the rate per cent of the tax levy for county purposes in counties having a population of less than 300,000 should not be reduced below a rate of fifty-five cents on each $100 assessed value, exclusive of levies to pay the principal and interest on bonded indebtedness and judgments.

Under the various provisions and limitations for the assessment and collection of taxes in force at the time the bonds in question were voted by the people of St. Clair county, this court has held in a number of decisions that a tax levied to pay a bonded county debt cannot be scaled, and that it was the intention of the legislature to authorize taxing bodies to levy a tax to pay bonded indebtedness up to the constitutional and statutory limit of seventy-five cents per $100 of taxable property. Under those decisions we have held that the county clerk is authorized to add to the fifty-five cents per $100 for county purposes any rate necessary for the payment of any bonded indebtedness and interest due and owing by the county, provided the total tax levy shall not exceed seventy-five cents per $100, which was the constitutional and statutory limit for county taxes when no vote of the people was had permitting a greater rate. *People* v. *Illinois Central Railroad Co.* 260 Ill. 603; *People* v. *Day,* 277 id. 543.

On June 30, 1919, a law was passed and approved in this State amending sections 25 and 27 of "An act to revise the law in relation to counties." Clause 6 of section 25 as amended fixes the maximum limit of taxation by counties for county purposes as follows: "Including all purposes for which money may be raised by the county by tax-

ation, not exceeding fifty cents on the $100 valuation, and
in addition thereto an annual tax not exceeding sixty-six
and two-thirds cents on the $100 for the purposes of pay-
ing the interest and principal of indebtedness which existed
at the time of the adoption of the constitution." Section 27
was amended so as to provide that whenever the county
board demeed it necessary to assess taxes the aggregate of
which should exceed the rate of fifty cents per $100 valu-
ation, except when such excess was to be used for the
payment of an indebtedness existing at the adoption of the
constitution, it might be empowered to make such excess
levy by having the question properly submitted to the peo-
ple of the county and a majority vote obtained in favor
of such excess levy as originally provided in the section.
(Laws of 1919, p. 741.) On the same day the legislature
amended section 2 of the Juul law so as to provide as fol-
lows: "In counties having a population of less than 300,000
the rate of the tax levy fór county purposes shall not be
reduced below a rate of fifty cents on each $100 assessed
value (exclusive of levies to pay the principal of and in-
terest on bonded indebtedness and judgments):  *  *  *
*Provided*, that no reduction of any tax levy made hereun-
der shall diminish any amount appropriated by corporate
or taxing authorities for the payment of the principal or
interest on bonded debt, or levied pursuant to the mandate
or judgment of any court of record. And to that end every
such taxing body shall certify to the county clerk, with its
tax levy, the amount thereof required for any such pur-
poses." (Laws of 1919, p. 772.) This new act, so far as
it relates to counties of less population than 300,000, is
in all respects the same as the act of 1917 amending sec-
tion 2 of the Juul law, except that by the act of 1917 the
provision was that the tax levy for county purposes "shall
not be reduced below a rate of seventy-five cents for each
$100 assessed value." (Hurd's Stat. 1917, p. 2494.) At
the same time, in 1919, our Revenue law was further

amended by the legislature raising the assessed value of property to one-half instead of one-third of the full value. (Laws of 1919, p. 728.)

The principal object of the legislature in passing the amendments in 1919 apparently was to permit to be raised thereunder just the same amount of taxes as could be raised under the old law and at the same time to grant to municipal authorities increased power to borrow money by raising the assessed value of property to one-half of the full value instead of one-third. It will be seen by any proper method of calculation that a tax rate of one-half dollar per $100 valuation on one-half the full value of the property raises exactly the same amount of taxes as would three-fourths of a dollar per $100 valuation on one-third the full value.

It is the contention of defendant in error that by said amendments it was the intent of the legislature, positively expressed, that no greater rate of taxes than fifty cents on the $100, except for a debt existing at the adoption of the constitution, can be levied by any county in this State of the class aforesaid, for any and all purposes, unless authorized by a vote of the people taken as aforesaid. It is also his contention that as under the Juul law as amended in 1919 the rate of the tax levied for county purposes cannot be reduced or scaled below a rate of fifty cents on each $100 assessed value, exclusive of levies to pay principal and interest on bonds and judgments, the county board of St. Clair county had no right or power to levy the sum or have extended the rate of taxation to be collected for the payment of said bonds and interest as demanded by it of defendant in error, as such right and power were denied by the vote of the people. It must be conceded that the county authorities must have express authority, either from the legislature or under the constitution, to levy and collect taxes and that they cannot exceed the powers in that regard so given them. They have no right or power to levy taxes for county purposes at a rate exceeding the limit fixed by the constitution

or by the legislature. Both limitations are equally bind-
ing upon them. But it cannot be conceded that either of
said two amendments of 1919 justifies the conclusion that
defendant in error was warranted, under these amendments,
in refusing to extend the bond tax in question for collec-
tion. The said amendment to the Juul law expressly pro-
vides that no reduction of any tax levy shall diminish any
amount appropriated by corporate or taxing authorities for
the payment of the principal or interest on bonded debt,
etc. This section contemplates, and in fact provides, that
all such appropriations shall be levied without reduction.

We think that counsel for defendant in error and the
court have been misled by not taking into consideration the
constitutional provision in regard to the payment of munici-
pal bonded indebtedness. Section 12 of article 9 of the con-
stitution provides that municipal corporations incurring any
indebtedness, before or at the time of doing so shall pro-
vide for the collection of a direct annual tax sufficient to
pay the interest on such debt as it falls due, and also to
pay and discharge the principal thereof within twenty years
from the time of contracting the same. This provision of
the constitution is self-executing, as has been frequently
held by this court. It requires no legislation to have it
carried into effect. It is a fundamental law enacted by
all the people of this State, and can in no way be abrogated
or annulled by any statute passed by the legislature on that
subject. While under this provision of the constitution no
express authority is given to contract a debt, yet when a
debt that is expressly authorized by the legislature is in-
curred by a municipality, the constitution makes it obliga-
tory upon the municipality to levy and collect a sufficient
tax to pay the interest as it matures and the principal with-
in twenty years. This provision for the tax must be con-
sidered as written by the constitution into every law passed
thereafter by the legislature allowing a debt to be incurred.
The only constitutional limitation on this provision is the

limitation found in section 8 of article 9 of the constitution providing that the aggregate of all taxes assessed and collected by the county authorities shall not exceed seventy-five cents on each $100 valuation, except for the payment of indebtedness existing at the time of the adoption of the constitution, unless authorized by a vote of the people. It therefore necessarily follows that the legislature is absolutely without authority to establish any limitation on the rate of taxation in counties or to pass any laws that will in any way nullify this provision of the constitution requiring such counties to provide for the collection of a tax sufficient to pay the debts they incur and to pay and discharge said debts as aforesaid. *Pettibone* v. *West Chicago Park Comrs.* 215 Ill. 304; *People* v. *Day, supra.*

In the case of *City of East St. Louis* v. *People,* 124 Ill. 655, it was expressly decided that under section 12 of article 9 of the constitution, where a city organized under a special charter has incurred any indebtedness since the adoption of the constitution in 1870, it is its duty, no matter what are the limitations of its charter, to provide for the collection of an annual tax to meet the interest thereon and to liquidate the debt within twenty years, and if it fails so to do and allows the debt to mature, the courts will compel it to levy a tax sufficient to pay the same, with the arrears of interest, at once. The court held that said section 12 would operate as a repeal of the provision of the charter of East St. Louis fixing such limitation if such limitation did not allow the collection of sufficient taxes to pay the interest and discharge the principal of the bonded debt. That charter was passed or put in force before the adoption of the constitution. Section 12 will likewise nullify any limitation on the collection of taxes in acts passed by the legislature since the adoption of the constitution that will not permit the payment of the bonded indebtedness as aforesaid. None of said amendments, therefore, can be construed so as to deny the right of the county authorities

to levy and have collected a sufficient amount of money to pay the bonds and the interest as they come due, or the right of the owners of the bonds to have the same paid.

In construing the amendments to the statutes under consideration we must assume that the legislature did not intend to make such amendments violate any constitutional provision. It is not apparent from the amendment to the Juul law that the legislature in any way intended to interfere with the collection and payment of bonded indebtedness and judgments under said provision of the constitution. It is to be inferred thereby that it did intend that bonded indebtedness and judgments should be extended and collected without reduction. When section 2 of the Juul law as above amended is fully considered in connection with that section as it read in 1917, the meaning of it is not in conflict with the other amendment of 1919 fixing the limitation of county taxes for all purposes at fifty cents on the $100 of the taxable property of the county except for indebtedness existing prior to the constitution. That is the limitation positively and unequivocally fixed by that amendment, and it is too plain and positive to be construed otherwise. We therefore cannot agree with plaintiff in error's construction that the bonded indebtedness is to be levied in addition to said fifty cents levied for all other county purposes. The same construction must be placed upon the 1917 amendment of the Juul law as upon the 1919 amendment in the part of that act now under consideration, as they are in all respects the same except as to the rate. The rate of the 1917 amendment is seventy-five cents for county purposes, and if bonded indebtedness be added to the seventy-five cents rate the constitutional limitation of seventy-five cents would be exceeded. While holding that the rate of fifty cents cannot be exceeded, we still adhere to our former holdings that the bonded indebtedness can not be scaled or reduced but must be levied and collected in full. (*People* v. *Illinois Central Railroad Co. supra;*

*People* v. *Chicago, Lake Shore and Eastern Railway Co.*
270 Ill. 477.) This is also the positive provision of sec-
tion 2 of the Juul law as amended. The rates for bonded
debt could only be added to the rate under the Juul law
when the rate under that law for all other taxes was less
than the limitation fixed by the legislature for all county
purposes. Under our holding counties will be able to col-
lect the same revenues for county purposes as they could
under the law of 1917, and it is clearly the intention of the
legislature by said amendments that there should be col-
lected just the same amount of revenue and no more. That
is another strong point in favor of the construction now
given these amendments.

The real question in this case is whether or not plaintiff
in error was entitled to have the writ of *mandamus* awarded
to compel defendant in error to determine and enter on his
tax books a rate sufficient to pay the bonds and accrued in-
terest, and that he and his successors shall be required to
continue to determine such rate and enter it for the pur-
pose of paying such indebtedness as it accrues in subse-
quent years. The petition and the demurrer thereto raise
no question for decision as to what such rate shall be or
whether it shall be over or within the fifty cent rate. We
have demed it necessary, however, to construe these two
amendments for the proper guidance of the county authori-
ties in scaling and extending the other county taxes subject
to the scaling process under the Juul law.

The judgment of the circuit court is reversed and the
cause remanded, with directions to overrule defendant in
error's demurrer, and for further proceedings in accordance
with the views herein expressed.

*Reversed and remanded, with directions.*