(No. 15155.—Judgment affirmed.)

THE PEOPLE *ex rel.* Robert H. Mater, County Collector, Appellee, *vs.* THE DANVILLE, URBANA AND CHAMPAIGN RAILWAY COMPANY, Appellant.

*Opinion filed February 21, 1923.*

1. TAXES—*section 14 of State Highways act of 1921 authorizes tax above the statutory limit.* Section 14 of the act of 1921 relating to State highways authorizes the levy of a tax for State aid roads, in addition to the statutory limit of fifty cents on the $100 for county purposes, until the constitutional limit of seventy-five cents is reached.

2. SAME—*when county board may levy additional tax both for State aid roads and for bonds and interest.* Under paragraph 6 of section 25 of the Counties act, as amended in 1921, the county board, in counties where an additional tax has not been authorized by a vote of the people, may levy a tax in addition to the statutory limit of fifty cents on the $100 both for the purpose of paying bonds and interest previously authorized for State aid roads and for the purpose of improving and maintaining the State aid roads; but the levy for both purposes cannot exceed the constitutional limit of seventy-five cents, including the levies for all other county purposes.

3. SAME—*when county bonds are within the meaning of paragraph 6 of section 25 of the Counties act.* The provision of paragraph 6 of section 25 of the Counties act, as amended in 1921, permitting the county board to levy an additional tax above the statutory limit to pay the "interest and principal of bonded indebtedness heretofore duly authorized for the construction of State aid roads," applies to county bonds authorized by the vote of the people in 1914 for the purpose of improving the highways of the county, where the provisions of section 15*b* of the Roads and Bridges act of 1915 were followed in providing for and constructing said roads, which have been accepted as State aid roads.

APPEAL from the County Court of Vermilion county; the Hon. THOMAS A. GRAHAM, Judge, presiding.

HENRY I. GREEN, and ACTON, ACTON & SNYDER, for appellant.

307—2

JOHN H. LEWMAN, State's Attorney, (O. M. JONES, and A. R. HALL, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The county board of Vermilion county levied for county taxes for all purposes for the year 1921 an aggregate rate of sixty-five cents on the $100 valuation. The following table shows the purposes, amounts levied and the rates of the several levies:

| | | |
|---|---:|---:|
| General county purpose | $194,310 | $.32 |
| Bonds and interest | 117,000 | .19 |
| Mothers' pension | 6,000 | .01 |
| County highway | 15,000 | .03 |
| Aid in construction county roads | 35,000 | .06 |
| Tuberculosis sanitarium | 21,992 | .04 |
| Totals | $389,302 | $.65 |

The Danville, Urbana and Champaign Railway Company, appellant, filed objections to all taxes levied in excess of fifty cents on the $100 valuation, on the ground that there was no authority for the levy of any of said taxes in addition to the aggregate rate of fifty cents for all other taxes so levied. The county court overruled appellant's objections and entered judgment against it for the taxes to which objections were made, in the sum of $507.22.

Appellant's specific points argued are: First, that section 14 of the Roads and Bridges act (Hurd's Stat. 1921, p. 2808,) does not authorize a levy of a county highway tax in addition to the aggregate of fifty cents levied for all other county purposes; second, that there was no bonded indebtedness of the county that was duly authorized for the construction of State aid roads at the time of the levy, and that for this reason paragraph 6 of section 25 of the Counties act (Hurd's Stat. 1921, p. 897,) did not authorize the levy for bonds and interest, or any part thereof, in addition to the aggregate rate of fifty cents for all other county taxes; and third, that there was no election, under sec-

tion 27 of the Counties act, (Hurd's Stat. 1921, p. 899,) authorizing a rate in addition to the maximum or aggregate rate of fifty cents on the $100 valuation, for any purpose.

The specific points argued by appellee in opposition to appellant's contentions are: First, that the county board had the right, under section 14 of the Roads and Bridges act, approved June 24, 1921, to levy, in addition to the maximum rate of fifty cents, the $15,000 for county highway tax; and second, that the board had the right and the authority, under the provisions of paragraph 6 of section 25 aforesaid, to levy the $117,000 for bonds and interest in addition to the maximum rate of fifty cents, because said bonded indebtedness was, prior to the amendment of paragraph 6 approved June 28, 1921, duly authorized for the construction of State aid roads in the county. Appellee makes no issue on appellant's third proposition, but admits there has been no vote of the people to levy taxes for any purpose above the maximum rate of fifty cents.

It is conceded that the $15,000 levied for county highways was levied under section 14 of the Roads and Bridges act approved June 24, 1921. This court has heretofore held that this section gives county boards the authority to levy to the limit of seventy-five cents on the $100 valuation, including the county highway tax therein provided for as additional taxes. (*People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 306 Ill. 459.) The county board in this case had the right to levy, in addition to the fifty cents maximum for all other purposes, the amount that it did levy, approximately three cents on the $100 valuation. The actual rate is a little less than three cents.

The $117,000 levied for bonds and interest is for $75,-000 principal and for $42,000 interest due on $1,500,000 of bonds authorized by a vote of the people of the county, under sections 40 and 56 of the Counties act, on November 3, 1914. This is the same bonded indebtedness of the county that was litigated and which was sustained by the

decision of this court in *Goodwine* v. *County of Vermilion,*
271 Ill. 126. No question is raised in this case as to the
validity of this bonded indebtedness. The county board was
required to levy the full amount due on said bonds, but prior
to the amendment of paragraph 6 of section 25 approved
June 28, 1921, the amount levied for said bonded indebted-
ness was required to be within the then maximum rate of
fifty cents. (*People* v. *Hoerr,* 294 Ill. 338.) The question
presented for decision on this record is whether or not said
bonded indebtedness was "duly authorized for the construc-
tion of State aid roads in the county," within the meaning
of the amendment of paragraph 6 of section 25 and is sim-
ply a question of fact. If the bonds were so authorized it
is clear that under the provisions of said amendment the
county board was authorized to levy said taxes in addition
to the maximum rate of fifty cents. The language of the
amendment is positive and to the effect that in addition to
the maximum rate of fifty cents, "an annual tax not to ex-
ceed twenty-five cents on the $100 valuation for the pur-
poses of improving and maintaining the State aid roads and
of paying the interest and principal of bonded indebtedness
heretofore duly authorized for the construction of State aid
roads in the county, unless additional taxes for said bonds
and interest or improvement and maintenance have other-
wise been authorized by a vote of the people of the county,"
may be levied. This section allows an additional levy for
bonds so authorized and for improving and maintaining
State aid roads. Vermilion county is within the class that is
authorized to levy for both of said purposes, because there
had been no vote of the people of the county to levy addi-
tional taxes for either of said purposes. (*People* v. *Cleve-
land, Cincinnati, Chicago and St. Louis Railway Co. supra.*)
The only limitation in levying for both of said purposes is
that the levy for both cannot exceed the constitutional limi-
tation of seventy-five cents, including the levies for all other
county purposes.

The $1,500,000 bonds voted by the people at the election aforesaid, in accordance with the provisions of section 12 of article 9 of the State constitution, were to be paid, both principal and interest, within twenty years. The payments were divided into twenty equal installments of $75,000 each, one installment and the interest on the entire bonds unpaid to fall due each year. One-third of the bonds were to be dated June 1, 1915, one-third June 1, 1916, and one-third June 1, 1917, and the rate of interest on the bonds was to be fixed at four percentum per annum, interest payable annually. The bonds were so executed and the county of Vermilion was the obligor in all the bonds. The bonds were voted and authorized by the people under the two sections of the Counties act aforesaid, and the original intent on the part of the county board in authorizing and executing these bonds was to connect practically every city and village in the county with the county seat and with each other, and at the same time to aid thereby the several road districts in the county by building hard roads on highways selected by the county board. The scheme contemplated and provided for a system of permanent roads across the county,—two north and south lines, four east and west lines and one southwest line to connect Danville, Catlin and Fairmount, making in all about 180 miles. The ballot voted by the people November 3, 1914, was headed, "Road Improvement Ballot," and the propositions to be voted, as shown by the ballot, were, "For County Bonds," and "Against County Bonds." Under these propositions the ballot stated: "This ballot is for the purpose of voting upon the question of issuing the bonds of the county of Vermilion, in the State of Illinois, in the sum of $1,500,000, for the purpose of aiding in the construction of roads and bridges in said county." Then followed a complete statement, as above given, as to the installments to fall due and when they were to fall due, when the bonds were to be dated, and the rate of interest they were to bear. The county board, in June previous to

the election, had located all the lines of road to be improved, and in the resolution reserved the right to make any changes found necessary in the location of any of the roads to be improved. The resolution provided that the width of the proposed roads be fixed at sixteen feet, and they were to be constructed with concrete or brick centers ten feet wide, with gravel or rock shoulders three feet wide on each side, and that such roads be improved according to the plans and specifications approved by the Illinois State Highway Commission. The record further shows, without dispute, that before the county board adopted its resolution of June 10, 1914, selecting the lines of road, practically all of the roads or lines so selected had previous thereto been selected and designated as State aid roads in the manner required by law, and that the small portion of the roads so selected by the county board that had not been previously selected and designated as State aid roads were so selected and designated on January 10, 1917. None of the bonds were issued until February, 1916, and none of the contracts were let until March, 1916.

In 1915 section 15*d* of the Roads and Bridges act was passed and approved and became a law before any contract was let for the building of the county bond roads. The county of Vermilion met the requirements of section 15*d* and constructed its roads (all of them that have been constructed) in accordance with the provisions of that section and as State aid roads. The State authorities approved of every contract that was let for such roads and approved the roads after they were constructed as State aid roads, and the record clearly shows that all of the bond money that has been spent was spent for State aid roads, and that the same is still being used for the construction of State aid roads. Not only has the State accepted the roads as State aid roads, but in accordance with section 15*d* it has paid over to the county of Vermilion $500,000 for roads already constructed, and under the stipulations in the record it is

further shown that the county will receive about $140,000 more on the completion of the roads now under construction with said bond funds. In other words, the county will have received about $640,000 as the State's obligation to pay one-half of the actual cost of said roads, less overhead expenses. We therefore find from the record that the bonds were duly authorized for the construction of State aid roads in the county within the meaning of paragraph 6 of section 25 of the Counties act, and that the county is authorized to levy the bond tax in addition to the maximum rate aforesaid. Such authorization was made by the passage of section 15*d* of the Roads and Bridges act and by the action of the county authorities in strictly pursuing the provisions of that act and in actually constructing said roads as State aid roads, which were approved and accepted by the State as such.

It may be further stated that the original purpose of the county to build hard roads in aid of the road districts of the county has not been abandoned, and the county authorities have met every requirement of section 56 of the Counties act to build roads in aid of the several road districts of the county. In other words, said county bonds have been duly authorized, and legally authorized, not only for the original purpose but also for the purpose of constructing State aid roads.

It is stated by appellee that the $35,000 levied for "aid in construction of county roads" was levied under section 56 of the Counties act, and the claim is made that this item can be levied in addition to the maximum rate of fifty cents. We are not impressed with this contention, but it is clear under the holdings of this court that the county board had the right to make this levy within the maximum rate of fifty cents. It is immaterial, therefore, in this controversy whether appellee's contention is correct that it can be levied in addition to the maximum rate or otherwise, as all the taxes levied for county purposes, including this item, ex-

cept the two items for county highway and bonds and interest, only make an aggregate rate of forty-three cents. The bonds and interest and county highway tax amount to twenty-two cents, which, added to the forty-three cent rate, makes the aggregate rate levied sixty-five cents.

The court properly overruled appellant's objections, and its judgment is affirmed.            *Judgment affirmed.*