THE PEOPLE OF THE STATE OF NEW YORK ex rel. OSWEGO FALLS CORPORATION and CITIZENS NATIONAL BANK AND TRUST COMPANT OF FULTON, Relators, *v.* JOHN M. FOSTER, as Mayor, and WILLIAM E. HOWARD and Others, as Aldermen, Comprising the Common Council of the City of Fulton, Oswego County, New York, and Their Respective Successors in Office, Respondents.

Fourth Department, May 5, 1937.

*George M. Fanning*, for the relators.

*William S. Hillick*, for the respondents.

*Dwight L. Murphy*, for the county of Oswego, *amicus curiæ.*

EDGCOMB, J.  By an order of the Supreme Court of Oswego county, the assessment of the property of the Oswego Falls Corporation in the city of Fulton for the years 1926 to 1929, inclusive, was materially reduced, and " the excessive taxes paid by the relator to the Chamberlain of the City of Fulton " for said years was, together with accrued interest thereon, ordered refunded to said property owner.

Thereafter, and on or about October 10, 1932, relators filed with the common council of the city of Fulton a certified copy of said order, and requested an audit of their claim.  Instead of complying with the demand in full, the council audited and ordered the city chamberlain to return a portion only of the excess tax which had been paid.  Thereafter the Oswego Falls Corporation and the Citizens National Bank and Trust Company of Fulton, to whom the amount of the excess tax had been assigned, instituted this proceeding to review and correct the determination of said council, to the end that the balance of relators' claim should be allowed and ordered paid.

The amount paid by relators to the city chamberlain during the years in question includes both the State and county, as well as the Fulton city tax.  Under its charter the city collects its share of the State and county taxes along with the city tax.  Section 243 of the charter (Laws of 1902, chap. 63) provides that the board of supervisors of Oswego county, instead of causing the State and

county taxes apportioned to the city of Fulton to be spread upon the tax roll of property within the city, shall, by resolution, ascertain and direct the amount of tax to be levied in the city for State and county purposes, and shall, within a specified time, certify such resolution to the common council of the city. The council is then required to file said resolution with the city clerk, and the clerk is directed to extend and apportion such tax on the assessment rolls, along with the city taxes. No other extension or apportionment of State and county taxes is made.

While the total tax to be paid by the property owner, and which the city chamberlain is required to collect, is extended in the last column of the roll, the respective amounts raised for city expenses, and for State and county purposes, appear in other columns.

The particular wording of the order which directed the return of the excess tax reads as follows:

" That the relator is entitled to a refund of excessive taxes paid as appears by the following tabulation with interest from the date of payment to the date of repayment:

| Paid | Excess tax | Portion for City purposes | Portion for State and County |
|------|-----------|---------------------------|------------------------------|
| July 1, 1927....... | $10,177 54 | $7,394 28 | $2,783 26 |
| July 1, 1928....... | 17,025 92 | 11,490 01 | 5,535 91 |
| July 1, 1929....... | 19,044 88 | 12,822 89 | 6,221 99 |
| July 1, 1930....... | 19,574 53 | 13,215 30 | 6,359 23 |
|  | $65,822 87 | $44,922 48 | $20,900 39 " |

The city has refunded $44,922.48, the amount which went to the city for its own use. The item in dispute is the $20,900.39, which was raised for State and county purposes. Relators insist that they do not know the county in the transaction, and that, inasmuch as the entire tax was levied and assessed by the city, and was paid to the city chamberlain, the city must, under the order of the court, and under the statute itself, refund the total excess tax paid. The city, on the other hand, takes the position that it is not liable for the portion of the tax which was raised for State and county purposes; that the refund of that amount should be made by the county. That is the dispute which we are called upon to settle. Should the county or the city refund this $20,900.39 to the relators?

When the board of supervisors certifies to the common council the amount of State and county taxes apportioned to the city, and the city clerk extends and apportions such tax on the assessment rolls, the city becomes the underwriter of its share of said State and county taxes, and is bound to pay the total amount

thereof to the county whether the same is collected or not. (*Matter of County of Oswego* v. *Foster*, 262 N. Y. 439; *County of Nassau* v. *City of Long Beach*, 272 id. 260; *Town of Amherst* v. *County of Erie*, 260 id. 361.)

Section 296 of the Tax Law, which provides for the refund of a tax which has been paid upon an illegal, erroneous or unequal assessment, requires that before the board of supervisors of a county, or the proper officers of a city or village, shall be authorized to make such refund, the tax shall have been *levied* by the municipality which is called upon to return the money.

In the instant case the county did not levy the city's share of the State and county tax. That was done by the city of Fulton. All that the county did was to determine the amount of the tax to be levied in the city for State and county purposes, and to certify that sum to the city clerk. The city clerk, and not the county, extended the tax, and spread upon the assessment roll the amount which the various property owners within the city were required to pay for county and State purposes, and that amount was collected by the city chamberlain. The warrant attached to the tax roll was signed by the city officials, and not by the chairman or clerk of the board of supervisors. The delivery of the roll to the chamberlain was made by the city, and not by the county.

While the word "levy" has various meanings, according to the connection in which it is used, when applied to taxation it means the extension of the tax against the taxable property. A tax cannot be said to be levied until it is so extended. (*Pettibone* v. *West Chicago Park Commissioners*, 215 Ill. 304, 317; 74 N. E. 387.)

To levy an assessment implies the doing of whatever is necessary in order to authorize the collector to collect the tax. (*Hohenstatt* v. *Bridgeton*, 62 N. J. L. 169, 171; 40 A. 649.)

Section 46 of the Fulton charter requires the common council to "levy" the aggregate amount ascertained and determined for city purposes, "together with the city's proportion of the county and State tax certified by the board of supervisors." Section 44 provides that, in addition to the amounts included in the annual tax "levy" for city purposes, "there shall be included such an amount as shall be certified by the board of supervisors * * * to be the city's share of the State and county tax levy."

There can be no doubt that the State and county tax was levied by the city, and not by the county.

The intent of the Legislature to put the entire responsibility for the levying and collection of all taxes, city, county and State, upon the city is made evident by the fact that the city is given authority by its charter (§ 253) to advertise and sell all lands upon which a

tax shall remain unpaid, for the payment of *the* tax — not the portion assessed for city purposes, but the entire tax, including penalty and interest. There is no provision which authorizes the county to sell property within the city for the unpaid portion of any tax assessed for county or State purposes. All responsibility for the levying and collecting of taxes within the city having been placed upon that municipality, and ample machinery having been placed in its hands to enforce collection of the same, it is quite apparent that the Legislature intended that the city should make good, in the first instance at least, any mistake in its assessment. The error in the assessment was made by the city assessors, not by a county official. From the beginning to the end the taxpayer deals with the city and not with the county. The county was not made a party to the certiorari proceeding which declared the assessment erroneous and unequal; that proceeding was brought against the assessors of the city. It cannot be possible that, under all these circumstances, the Legislature ever intended to send the wronged taxpayer to the county for redress.

But the city contends that under subdivision 2 of section 296 of the Tax Law it is not required to audit and allow the disputed items involved in this proceeding unless that part of the tax was levied " solely for the benefit and purposes of such [the] city;" it is urged that this money was raised for the profit of the county, and not for the city. As has already been stated, the city was legally bound to pay the county the entire share of the city's portion of the State and county taxes, whether the city collected the amount from the taxpayers or not. This amount became a debt of the city owing the county. If one uses his own money to pay his legal obligations it cannot be gainsaid that he is not expending it for his own end and profit. A municipality, as well as an individual, is authorized and can be compelled to pay its just obligations; in so doing it is using the money for its sole benefit and purpose. " The purposes " of a city include the payment of its debts, and the reduction of its indebtedness is certainly for its own benefit.

Still further authority for requiring the city to refund the entire portion of these erroneous taxes is found in chapter 461 of the Laws of 1932. The city found itself in financial difficulty back in 1932. Numerous applications were made to reduce assessments, and orders were made requiring a refund of taxes paid on illegal and erroneous assessments which ran into a large figure. Application was made to the Legislature, and on March 28, 1932, an act was passed authorizing the city to issue bonds in an aggregate amount not to exceed $303,000, " For the purpose of repaying taxes heretofore collected by the city of Fulton, with interest thereon, *levied upon assessments*

*found and determined by any final order, or orders, judgment or judgments, decree or decrees, of the Supreme Court of the State of New York, heretofore or hereafter rendered, to be illegal, erroneous or unequal in certiorari proceedings heretofore instituted."* (Italics mine.)

This act is broad and comprehensive in its terms. The money was not raised to refund a portion of a tax paid on an erroneous assessment. The statute does not specify that only such portion of the tax which was used solely for city purposes can be paid out of the proceeds of these bonds. Funds are thus provided for the purpose of paying all taxes levied and collected by the city based on assessments found to be illegal, erroneous or unequal in certiorari proceedings. That is exactly the case here. The tax in question was levied upon an assessment which has been found to be illegal and erroneous by a decree of the Supreme Court in a certiorari proceeding.

The city urges that, if it is compelled to repay the part of this excessive tax apportioned for the State and county purposes, other districts of the county will benefit by the resultant inequality in the distribution of the State and county taxes among the various tax districts of the county. This same argument was advanced without avail in *Matter of County of Oswego* v. *Foster* (262 N. Y. 439); *Town of Amherst* v. *County of Erie* (260 id. 361); *County of Nassau* v. *City of Long Beach* (272 id. 260); *Mayor, etc., City of New York* v. *Davenport* (92 id. 604), and *Matter of Wadhams* (249 App. Div. 271). As was said in the *Wadhams* case, last cited: " It is a question of clear legal duty as declared by the statute, and not one of equities between the different tax districts. The Legislature alone has the right to determine, within its legitimate discretion, all questions respecting the imposition and collection of taxes."

It seems that the relators accepted and retained that portion of their bill which was audited and allowed by the common council. Respondents urge that by so doing they are estopped from disputing the correctness thereof.

Without doubt a creditor who accepts the benefits of an audit without protest or reservation, and who acquiesces therein without questioning the legality of the action of the auditing body, would be denied the right to subsequently repudiate the action taken. (*People ex rel. Erie R. R. Co.* v. *Board of Supervisors*, 193 N. Y. 127; *People ex rel. McDonough* v. *Board of Supervisors*, 33 Hun, 305.)

It is stipulated, however, that when the relators accepted the portion of this erroneous tax which was audited, they did so without prejudice to their right to collect the balance. The common council passed a resolution approving and confirming the position taken

by the city attorney that acceptance by the relators — they having objected to the amount of the checks tendered — would not constitute a waiver " within the purview of the opinion of the Court of Appeals in *People ex rel. Erie R. R. Co.* v. *Board of Supervisors* (193 N. Y. 127, 132) of any right which the relators or their assigns might have, or have, to recover said State and county taxes from either the city of Fulton or the county of Oswego, whichever may be liable, and the checks are tendered under this understanding."

This action on the part of the common council takes the case out of the general rule, and by reason thereof relators' remedy to enforce payment of the balance of this erroneous tax is not barred.

Much has been said in the briefs of counsel concerning relief which may or might have been afforded through equalization. While we have given that subject careful consideration, we fail to see how it is material to this decision, and, therefore, fail to discuss it in this opinion.

For the reason stated we think that the order of certiorari should be sustained, and the determination of the respondents should be reversed, and that they should be directed to take such action as may be necessary to direct the city chamberlain to pay to the relators the balance of the moneys directed to be paid them by the final order of the Supreme Court in the certiorari proceedings brought to reduce the assessment of relators' property, with fifty dollars costs and disbursements.

All concur; THOMPSON, J., having been present at the argument of said appeal, but having died on the 7th day of April, 1937, without having taken any part in the determination of this appeal. Present — SEARS, P. J., EDGCOMB, CROSBY and CUNNINGHAM, JJ.

In certiorari proceeding, determination of the common council, in so far as it denies payment of the portion of the taxes levied for county and State purposes, to wit, $20,900.39, with interest, annulled on the law and the common council directed to proceed in accordance with the opinion, with fifty dollars costs and disbursements.