In the Matter of the Application of ROCHESTER SAVINGS BANK, Petitioner, for an Order, Pursuant to Article 78 of the Civil Practice Act, against the COUNTY OF MONROE, NEW YORK, and Others, Respondents.

Supreme Court, Monroe County, November 26, 1938.

*Harris, Beach, Folger, Bacon & Keating [Harlan F. Calkins of counsel], for the petitioner.*

*Harry Rosenberg, Monroe County Legal Adviser, for the respondents.*

LAPHAM, J. This is an application under article 78 of the Civil Practice Act for an order directing the county of Monroe to refund to the petitioner the sum of $734.54 in taxes which were paid by the petitioner to the county on January 30, 1937. The pertinent facts have been stipulated by all the parties to this proceeding.

The petitioner is the owner of the Milner Hotel, located at No. 90-108 South avenue in the city of Rochester, N. Y. Prior to August 1, 1936, the assessors of the city of Rochester, in the preparation of the assessment roll for the city taxes, which were due in 1937, placed an assessment on this property in the sum of $315,000. The property had been assessed at this same amount for the tax payable in the years 1933 to 1936, inclusive. The petitioner protested against the assessment during the grievance days in August, 1936, and after the confirmation of the tax roll by the common council of the city of Rochester on or about November 1, 1936, the bank commenced a certiorari proceeding to review and reduce the assessment to which the respondents were not parties and in which neither they nor any officer of the county appeared. The certiorari proceeding was compromised by reducing the assessment from $315,000 to $240,000 and a final order of the Supreme Court directing this reduction upon the assessment rolls of the city of Rochester for the year 1937 was entered in the Monroe county clerk's office on April 8, 1938, and certified copies of this order were served on the respondents.

In December, 1936, the board of supervisors of Monroe county levied the county tax due in January, 1937, on the assessment roll delivered to the board by the city assessors on October 1, 1936. This roll was not a copy of the assessment roll prepared during 1936 by the city assessors but was a copy of the assessment roll prepared in 1935 for the city tax payable in January, 1936. On this assessment roll the value of the petitioner's property was fixed at $315,000. No protest or complaint against this assessment was made by the petitioner during the grievance period in August, 1935, and no protest was made when the petitioner paid the county taxes based on this assessment roll in January, 1937. The board of supervisors corrected the assessment on the petitioner's property on the roll prepared in 1936 for the county taxes payable in January, 1938, by reducing the assessment in the amount directed by the order in the certiorari proceeding.

On April 15, 1938, the petitioner applied for a refund of a portion of the county tax paid in January, 1937, which was based on the difference in valuation between $315,000 and $240,000. The petition was denied by the board of supervisors on June 2, 1938, and this proceeding to compel the return of these taxes was begun in the following month.

Neither section 1286 of the Civil Practice Act, prescribing limitations of time within which an application under article 78 must be brought, nor section 6-a of the County Law, deprives the petitioner of the right to an inquiry into the merits of this contro-

versy in my judgment. It is the contention of the petitioner that the board of supervisors in rejecting the application for a refund of the taxes failed to perform a duty specifically enjoined by the Tax Law, and section 1286 permits an application to be made within four months after the refusal to fulfill this duty. The petition made by the bank on this application is timely within the terms of section 1286.

Section 6-a of the County Law, requiring the presentation of a written claim to the clerk of the board of supervisors and to the county attorney within three months after the damage has been sustained, does not reach, in my opinion, to an application for a tax refund. The section deals with injury to persons or to property caused by negligence and other torts of a county or its officials and its language by implication excludes claims for refunds of taxes and reviews of assessments. The relationship between a taxpayer and its government is unique in character on account of the dominant position occupied by the government in levying taxes and the remedies of the taxpayer to recover taxes which have been illegally or erroneously assessed and levied should not be mpaired unless the mandate of the statute is clear. Statutory recognition of this relationship has been given by the enactment of article 13 of the Tax Law conferring on aggrieved taxpayers the right to review assessments by certiorari proceedings. The existence of these specific provisions of the Tax Law conclusively shows that claims for reductions of assessments or taxes are not included within the general terms of section 6-a of the County Law. Although this application is not a certiorari proceeding, it rests upon the order obtained in the certiorari proceeding instituted against the city by the petitioner and upon section 296 of the Tax Law.

The foundation of the petitioner's claim for relief is the order secured in a certiorari proceeding which was instituted against the city of Rochester. The order cannot by its own inherent force and authority operate to bind the county because the county was not a party to the certiorari proceeding and neither the county nor any of its officers appeared or participated in the proceeding in any way. One of the principles most firmly embedded in the body of our law is that a person is not bound by a judgment or an order obtained against him without service of process or without notice or an opportunity to be heard. (*McDonald* v. *Mabee*, 243 U. S. 90; *Stuart* v. *Palmer*, 74 N. Y. 183; *City of Buffalo* v. *Hawks*, 226 App. Div. 480, 483; 21 R. C. L. 1262.)

The mere fact that the county uses the assessment rolls prepared for the city of Rochester and must accept the valuation on the taxable property adopted by the city assessors does not establish so close and intimate an association between the city and the county that one can be considered the *alter ego* of the other. The city and the county are distinct political entities and each is vested with the power to levy taxes which is a distinctive attribute of sovereignty. (Rochester City Charter, Laws of 1907, chap. 755, §§ 188, 209–212, as amd. by Local Laws of 1925, No. 4; Local Laws of 1934, No. 11.)

The possession by the city of power to levy city taxes and by the county of power to levy county taxes distinguishes the present case from *People ex rel. Oswego Falls Corp.* v. *Forster* (251 App. Div. 65; affd., 278 N. Y. 494), which is cited by the petitioner. In that case the city, and not the county, by virtue of charter provisions, levied all the taxes for city, State and county use and the court held that the petitioner was not required under those circumstances to seek a refund from the county. There, the county had no important tax functions to perform; here, the county had vital tax functions to discharge and the manner in which it performed them could not be the subject-matter of a proceeding in which its voice was not heard.

The petitioner contends that section 296 of the Tax Law in any event compels the return of the excess taxes paid to the county. The section provides in part: " If in a final order in any such proceeding it has been or shall be ordered or adjudged or determined that the assessment complained of was illegal, erroneous or unequal, and correcting or directing correction thereof, and such order shall not be made in time to enable the assessors  *  *  *  to make a new or corrected assessment for the use of the board of supervisors  *  *  *  levying any tax upon such property,  *  *  *  then any tax collected or to be collected upon such illegal, erroneous or unequal assessment shall be refunded."

The petitioner cannot rely on this section in the face of the undisputed fact that the assessment which was the subject of the certiorari proceeding appeared on the assessment roll prepared for 1936 for the payment of city taxes due in 1937 and that the assessment which the petitioner now seeks to attack appeared on the assessment roll prepared by the city assessors in 1935 and delivered by them to the board of supervisors on or about October 1, 1936, for use in the levying of county taxes payable in 1937. Above all the issues that have been raised on this application the basic fact stands out that the assessment roll prepared in 1935 on which the county tax was levied in December, 1936, has not been challenged or affected by any other proceeding or order. The certiorari order is in terms directed to the assessment rolls of the

city of Rochester for the year 1937 and commands a reduction of the assessment on this 1937 assessment roll. The order does not and could not reach to the roll prepared in 1935 for city taxes payable in 1936 because the attack in the certiorari proceeding was made only against the roll prepared in 1936 for the city taxes due in 1937. The county has complied with this order by levying the county tax in December, 1937, on the reduced valuation of $240,000 on the petitioner's property and this compliance is the extent and limit of its duty under the order and under the Tax Law.

In support of its application for a refund the bank alleges that the county in levying the taxes for 1937 on the assessment roll prepared in 1935 used the wrong assessment roll as a basis for the levy and that it should have used the assessment rolls prepared by the city assessors in 1936. For some years prior to 1925 the county had used the most recently prepared assessment rolls, but since 1925 the county has used the assessment rolls prepared by the city assessors one year in advance of the tax levy based upon them. The lag of one year in the use of the city assessment rolls by the county has arisen as a result of various amendments to the city charter made at intervals from 1834 to 1934 which have moved the date for payment of the city taxes ahead from the fifteenth day of December in each year to January of the previous year and which have pushed back the date for payment of county taxes from November first in each year to January of the following year. At the present time the charter requires the delivery of the assessment rolls to the city clerk on or before October first and confirmation of the tax rolls by the city council on the fourth Monday in October or within five days thereafter (Local Laws of 1934, **No.** 11). Section 208▮ of the city charter (Laws of 1907, chap. 755) directs the city assessors to deliver to the board of supervisors a copy of the tax rolls prepared for the current year as they then exist on or before October first in each year unless the time for such delivery has been extended by resolution of the board of supervisors.

The determination of this question must be sought in the provisions of the city charter. Section 208*provides that the city assessors must deliver to the board of supervisors on or before October first, " a correct copy of said tax rolls prepared for the current year as they then exist." The charter does not say that the tax rolls must be prepared in the current year. Under the provisions of the present law the assessment roll on October 1, 1936, is not complete because it still requires the confirmation and correction by the city council on or after the fourth Monday in October. If the county were compelled to use the incomplete

assessment roll, it could not discharge its duty of equalizing the tax burden between different communities and districts with any finality because its decision might be upset by changes made by the city council in confirming the tax rolls. The words " as they then exist," occurring in section 208█ of the city charter, do not contemplate the use of an incomplete roll by the county. These words, as their context and the other provisions of the charter clearly show, are retrospective and not prospective. They refer to changes already made in the assessment rolls prior to their delivery to the city clerk by way of amendments and corrections and the insertion of special assessments authorized by section 188 and by section 208* of said city charter (Laws of 1907, chap. 755).

Whatever interpretation may be placed upon the text of the statutory provisions themselves, there has been a custom of using the assessment rolls of the previous year for a period of over twelve years which amounts to a practical construction of the statute by the officers intrusted with the administration of its provisions. The acquiescence of the petitioner in this practical construction defeats its right to attack the validity of the custom. A custom or practice which has been followed and indulged for a long period of time by public officers is of great significance in the construction of the language of a statute which is ambiguous. (*Town of Amherst* v. *County of Erie*, 260 N. Y. 361, 369, 370; *Matter of Koenig* v. *Flynn*, 258 id. 292, 300; *Bullock* v. *Cooley*, 225 id. 566; *Grimmer* v. *Tenement House Dept. of City of New York*, 205 id. 549; *Matter of Lawrence-Cedarhurst Bank*, 247 App. Div. 528; affd., 272 N. Y. 646.)

In *Grimmer* v. *Tenement House Dept. of City of New York (supra)* the Court of Appeals said (at p. 530): " There is no question that the practical construction of a statute by those for whom the law was enacted or by public officers whose duty it is to enforce it, acquiesced in by all for a long period of time, is of great importance in its interpretation in a case of serious ambiguity."

In *Matter of Koenig* v. *Flynn (supra)* the rule was reiterated by Judge CRANE in slightly different language (at p. 300): " A uniform course of action involving the right to the exercise of an important power by the State government without question is no unsatisfactory evidence that the power is rightfully exercised."

There is another obstacle to the recovery of the taxes by the petitioner. When the taxes were paid by the bank to the county in January, 1937, no protest or objection was made. Protest is essential to save the payment from being a voluntary payment which the taxpayer is powerless to recover. A voluntary payment is not a bar to a refund under section 296 of the Tax Law (*People ex rel. Eckerson* v. *Board of Education*, 126 App. Div. 414; affd.,

193 N. Y. 601), but where, as here, section 296 is inapplicable, there must be evidence that the taxpayer is not assenting to the payment of the tax. The cases which have allowed a recovery of taxes illegally or erroneously imposed have involved payments made by the taxpayer under protest or under such immediate pressure or duress as to make a protest useless or unavailing. Such was the case of *Adrico Realty Corporation* v. *City of New York* (250 N. Y. 29), upon which the petitioner relies. There must be some evidence of the taxpayer's intention to resist exaction of the tax even though he is powerless, in the face of imminent penalties, to prevent it or the circumstances must themselves show the futility of a protest. (*Adrico Realty Corp.* v. *City of New York*, 250 N. Y. 29; *Manufacturers & Traders Trust Co.* v. *City of Buffalo*, 266 id. 319; *Matter of Village of Delhi*, 201 id. 408; *Tripler* v. *Mayor of City of New York*, 125 id. 617; *Atchison, etc., R. Co.* v. *O'Connor*, 223 U. S. 280; *Girls' Friendly Soc. of N. Y., Inc.*, v. *City of New York*, 144 Misc. 839.)

The county was not warned or informed of the petitioner's intention to challenge the tax, either directly or by the pendency of the certiorari proceeding against the city to which the county was not a party (Cf. *People ex rel. Wessell Nickel & G.* v. *Craig*, 236 N. Y. 100, 105), and there was not here the degree of duress and pressure to which the taxpayer was subjected in the *Adrico* case nor any showing that protest would be futile.

It is certainly not inequitable to compel the petitioner to pay taxes on an assessment made in 1935 which has not been previously challenged. Taxes are the price which we pay for a civilized society, and the taxes paid to the city in January, 1936, and to the county in January, 1937, are the measure of the benefits enjoyed by the petitioner's property from the city and county during the period from 1935 to 1936. The value of these benefits from the city was fixed upon a valuation of $315,000 in 1935. The value of the benefits from the county should, in reason and in compliance with the statutes, be fixed upon the same basis, excluding minor variations caused by equalizing the tax burden among the communities in the county.

The petitioner has paid a tax to the city on a 1935 valuation to which no objection has been interposed. It seeks a refund from the county which is based upon this same valuation. It has secured a refund of its tax paid to the city in 1937, which was based upon a valuation placed on the property in 1936, and it has obtained the benefits of the same reduction in the amount of the assessment on the roll prepared in 1936 in the reduced taxes paid to the county in January, 1938. To permit the petitioner to secure the benefits

of a reduction in the assessment on the 1935 roll in the face of these facts would be to give the petitioner a largess to which it has not shown itself entitled.

The governing statute permitted the county to use the most recently prepared assessment rolls by the adoption of a resolution extending the time for delivery of these rolls by the city assessors to the board, but the adoption of such a resolution was not mandatory on the board. The objective of a scientific and orderly assessment would be promoted by the exercise of this power by the board, but, as the statute read at the time of the delivery of these tax rolls, its mandate was permissive only and not compulsory.

The application of the petitioner for an order directing the respondents to refund the sum of $734.54 to the petitioner is denied, without costs. An order may be submitted in accordance with this decision.