Vincent A. Lupiano, J.
The parties seek a declaratory judgment; in addition plaintiff seeks a money judgment.
On September 25,1958 one of the defendants, Safeway Stores, Incorporated, as lessee, entered into a written lease with the plaintiff’s predecessor in title, as lessor, covering premises 505 New Rochelle Road, New Rochelle, New York, for a term of 15 years commencing July 1, 1959 and terminating June 30, 1974, at the specified monthly rental of $2,083.34. The lessor at its sole cost and expense was required to construct a store building and parking lot which the lessee would occupy when completed and ready for occupancy whereupon the lease and payment of rent would commence. The words “ ready for occupancy ” are defined therein as the date when the construction work was fully completed and exclusive possession of the premises delivered to the lessee.
Paragraph 24 of the lease states: “In addition to the rent herein, the lessee agrees to pay any increase in realty taxes imposed on the premises described herein over and above the realty taxes levied against these premises for the first year after completion of the building.”
The store building and parking lot were substantially completed in December, 1959. Safeway then took possession, at Avhich time the lease became effective and the rent payments commenced.
The plaintiff, Wister Corporation, acquired title to the premises as follows: the entire property was sold by the original lessor developer, Park Web Co. Inc., prior to September 1,1960, to Land Properties, Inc., subject to the lease, and on or about September 1, 1960 Land Properties, Inc., similarly sold the premises to Isidore Silverman and Israel Lewittes. On January 17, 1961 these individuals sold the premises to the plaintiff, the present OAvner.
The defendant Safeway Stores, Incorporated, occupied the premises from December, 1959 to October 7,1961, and thereafter assigned the lease to the codefendant First National Stores, Inc., the present tenant. First National assumed the obligations of the lease, but Safeway continues to be liable thereunder as surety for the rent.
The issue submitted for determination and judgment is: What is the base year under paragraph 24 of the lease, or the year in which realty taxes were levied against the premises for the first year after completion of the building?
*322 Plaintiff contends that the base period was the calendar year 1960 for town taxes and the fiscal year commencing July 1, 1960 for school taxes. Defendants contend that such base period was the calendar year 1961 for town taxes and the fiscal year commencing July 1,1961 for school taxes.
The realty taxes imposed upon the premises and paid during the year 1960 were $2,165.50. Those which were imposed upon the premises during the year 1961 were $6,487.73. Plaintiff also seeks judgment for $4,322.23 as additional rent due for the year 1961, representing the difference of such taxes for 1960 and 1961.
It appears that at the time of the execution of lease the property was vacant land. As of June 1,1958, for tax purposes and for the next tax year 1959, a valuation was placed on the premises, for land only, of $11,300. As of June 1,1959, for the ensuing-tax year 1960, a valuation was placed on said premises of $19,700 for the land, $15,000 for the foundation which had been constructed after the original lessor obtained a temporary building permit on April 3, 1959. A final building permit was obtained on May 1, 1959. Significantly, the town tax records and the tax bill for the 1960 calendar year were both marked “partial assessment”. Later, as of June 1, 1960, and about five months after the completion of the building and acceptance of possession by the defendant Safeway, a valuation for tax purposes was made as follows: $19,700 for land only and $82,700 for the building and parking improvements. Because of this subsequent valuation the tax bill for the calendar year 1961 did not bear the notation “ partial assessment ” as was reflected in the prior tax year 1960.
The Receiver of Taxes for the Town of Eastchester testified on behalf of the defendants that there is only one assessment made each year as of June 1 which was followed in each of the calendar years 1959, 1960 and 1961; that the assessment is based on inspections made prior to June 1 of any given year, and no further assessment is made until the following June 1, notwithstanding that further improvement is made or completed during the interval period. He testified further that taxes are fixed and levied based on these assessed valuations and the taxes levied herein for the year 1960 were based on the assessment made as of June 1,1959, said assessment being a “ partial assessment ” for the then ineompleted premises.
Such testimony accurately presents the procedure applicable herein, since a tax levy includes and is preceded with an annual assessment or valuation of real property.
*323 In People ex rel. Oswego Falls Corp. v. Foster (278 N. Y. 494, affg. 251 App Div. 65, 68) the Court of Appeals in effect adopted the following statement: “ To levy an assessment implies the doing of whatever is necessary in order to authorize the collector to collect the tax. (Hohenstatt v. Bridgeton, 62 N. J. L. 169, 171; 40 A. 649.) ”
Section 302 of the Beal Property Tax Law states that “ [t]he taxable status of real property in cities and towns shall be determined annually as of the first day of June ”, and that the real property shall be assessed in the city or town in which situated according to its condition as of such date.
Plaintiff’s predecessor owner paid the 1960 town tax bills marked “ partial assessment ” on April 29, 1960 in the amount of $1,210.18 based on the valuation of $34,700 and made as of June 1, 1959, six months before the completion of the building and commencement of the lease. Plaintiff is in error in asserting that since such tax payment was made about four months after the building was completed, the payments collected in 1960 made that year the base tax year contemplated by the parties in paragraph 24 of the lease. The mere act of collecting the tax bill in April, 1960 did not by itself mean that it was founded upon the actual condition and valuation of the premises then existing, since the levying of taxes for that year perforce involved statutory procedure, commencing with assessing or determining the valuation of the property in June, 1959 and the subsequent extension of the appropriate taxes against that valuation. Moreover, herein, specifically, the tax levies intended for the base period were those imposed against “ these premises for the first year after the completion of the building This plainly means that under section 302 of the Beal Property Tax Law the levy of such taxes against the described premises for that purpose could not be made before June 1, 1960, the next and earliest statutory date when the taxable status, valuation and condition of such premises could be fully determined within the purview of the lease.
For the above reasons, the defendants are entitled to the relief prayed for in their answer.
Settle judgment accordingly, in which no costs shall be allowed.